**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3808
_____

UNITED STATES OF AMERICA

v.

AKEEM JOSEPH
also known as
AKEEM OLAJUWON

Akeem Joseph,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-09-cr-00673-001
District Judge: The Honorable Gene E. K. Pratter

Argued July 17, 2013

Before: RENDELL, SMITH, and SHWARTZ,
*Circuit Judges*

(Filed: September 19, 2013)

Mary Kay Costello, Esq. [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106
    *Counsel for Appellee*

Keith M. Donoghue, Esq.        [ARGUED]
Robert Epstein, Esq.
Nina C. Spizer, Esq.
Federal Community Defender Office for
the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106
    *Counsel for Appellant*

————————————

OPINION

————————————

SMITH, *Circuit Judge.*

Lawyers and judges are familiar with the well-worn adage that bad facts make bad law. A possible corollary to this proposition is that good facts make good law. This case is of the latter type, in which

2

straightforward facts present an opportunity to rectify imprecisions in our case law regarding the preservation and waiver of suppression arguments. We must decide the degree of particularity required for a party to preserve a suppression argument for appeal purposes. To determine this, we must clarify our terminology as to what it is parties preserve. We conclude that "issues" and "arguments" are distinct concepts: an issue can be broader in scope than an argument in that an issue may be addressed by multiple arguments, which are the most basic building blocks of legal reasoning. We hold that for parties to preserve an argument for appeal, they must have raised the same *argument* in the District Court— merely raising an *issue* that encompasses the appellate argument is not enough. Consequently, the degree of particularity required to preserve an argument is exacting. Because appellant here has not preserved the sole argument made on appeal, we will affirm.

I

In the early morning hours of October 16, 2008, Akeem Joseph was arrested outside the Atlantis Gentlemen's Club in Philadelphia. One of the arresting officers, Officer Julia Umbrell, was flagged down by the club's security officer, who explained that Joseph had tried to "pass" (exchange counterfeit currency for authentic currency) several $100 bills at the club. Umbrell did not inspect the bills for authenticity but did ask Joseph for identification and whether he tendered

3

them at the bar. Joseph acknowledged that he tendered the bills and, for identification, provided a passport with a torn photograph.

Officer James Morrison arrived after Umbrell called for backup. Morrison asked Joseph where he had acquired the bills, and Joseph explained that he had obtained them when he cashed his pay check at a local racetrack. Morrison then shined his flashlight on one of the bills provided by the club's security officer. This inspection revealed a discrepancy in the bill's security features: the president's face in the bill's watermark did not match the face printed on the bill. Meanwhile, Umbrell confirmed with the club's manager and barkeep that Joseph had tendered the bills.

Joseph was then arrested and searched at the scene. The officers found fourteen more counterfeit $100 bills in one of Joseph's pockets. Joseph was subsequently taken in for questioning by the Secret Service. After waiving his *Miranda* rights, Joseph provided a Secret Service agent with several incriminating text messages from his cell phone and confessed to attempting to pass the counterfeit bills. Consequently, Joseph was indicted on one count of passing two counterfeit $100 bills and one count of possessing fourteen counterfeit bills. *See* 18 U.S.C. § 472.

In the District Court, Joseph moved to suppress the counterfeit bills in his pocket, the text messages, and his

confession. He argued that the search was unlawful on two grounds. First, he contended that it was an illegal *Terry* stop and frisk. Second, he asserted that the officers lacked probable cause for the arrest because no one at the scene had sufficient expertise in counterfeiting to know whether the bills were in fact counterfeit. After an evidentiary hearing, the District Court denied Joseph's motion. The case proceeded to trial, and a jury found Joseph guilty on both counts.

Joseph appeals the denial of his suppression motion.[1] He now argues, for the first time, that probable cause to arrest was absent because the officers had insufficient evidence to establish his intent to defraud at the time he passed and possessed the counterfeit bills.

II

The dispositive question in this case is whether Joseph waived the argument presented in this appeal. In *United States v. Rose*, 538 F.3d 175 (3d Cir. 2008), we held that under Federal Rule of Criminal Procedure 12, "a suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent good cause." *Id.* at 182.[2] This rule applies not only when

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[2] Joseph has offered no reason, and we see none, that any waiver is excused because of good cause. *See United*

5

defendants altogether fail to raise any suppression arguments in the District Court, but also when defendants fail to raise particular arguments later advanced on appeal. *Id*. The central dispute in this case is over the degree of particularity required to preserve an argument. Joseph contends that by raising the issue of probable cause in the District Court, he can argue the absence of probable cause for any reason on appeal. In particular, he contends that his District Court argument that the officers lacked probable cause as to the actus reus (the officers did not have the expertise to know whether the bills Joseph passed were fake) preserves his appellate argument that they lacked probable cause as to the mens rea (the officers did not have any evidence showing an intent to defraud and Joseph offered a plausible explanation for how he came to possess the bills). The government takes the opposite position: for Joseph to preserve the mens rea argument for appeal, he must have argued in the District Court that probable cause was absent for want of evidence at the time of arrest demonstrating the requisite mental state.

---

*States v. Harrison*, 689 F.3d 301, 310 (3d Cir. 2012). Consequently, although the terminology we establish here may be of assistance in the good-cause context, our holding is limited to deciding when a party has preserved an argument and does not identify what considerations are relevant for whether waiver is excused.

6

Although consistent in reasoning, many of our cases are inconsistent in terminology. Our purpose here is to clarify the framework for discussing and analyzing waiver questions.[3] Under this framework, we conclude that Joseph has waived his mens rea argument.

A.     Defining what a Party Preserves or Waives

Our case law on the degree of particularity required for preserving an issue for appeal is less than clear. In *United States v. Lockett*, 406 F.3d 207 (3d Cir. 2005), we stated that suppression arguments made on appeal must be "substantially the same theories of suppression" advanced in the District Court. *Id.* at 212. In *United States v. Dupree*, 617 F.3d 724 (3d Cir. 2010),

---

[3] Because waiver of suppression arguments is controlled by Rule 12, we do not have occasion to consider whether the framework explained here applies in other waiver contexts, such as Federal Rule of Criminal Procedure 52(b) and waiver in civil cases. *See Rose*, 538 F.3d at 177–78 (explaining that under Rule 52(b), arguments not raised in the District Court are reviewed for plain error); *Huber v. Taylor*, 469 F.3d 67, 74–75 (3d Cir. 2006) (explaining the "prophylactic and prudential origins" of the waiver rule in civil cases, which provides that "failure to raise an issue in the District Court results in its waiver on appeal" unless the Court uses its discretionary power to address the issue).

two judges of this Court suggested that an argument was preserved because it was within the "overarching question" of the proceedings. *Id.* at 740 (Fisher, J., concurring in part and concurring in judgment); *see also id.* at 734 (Cowen, J., dissenting) (agreeing with Judge Fisher's waiver conclusion because the argument on appeal followed from the same precedent that was relied on in the District Court and was not precluded by the argument made in that court). And in *United States v. Berrios*, 676 F.3d 118 (3d Cir. 2012), we explained that an argument is preserved only if it is the "specific issue[]" raised in the District Court. *Id.* at 130.

Although a closer look at our cases reveals consistency—that is, an approach requiring exacting specificity—certain statements in the opinions seem to suggest varying degrees of specificity. "[O]verarching questions" appears less demanding than "substantially the same theor[y]," which in turn seems less demanding than "specific issue." Resolving this tension first necessitates clarification of our terminology for discussing preservation and waiver. Unfortunately, many of our cases have been imprecise in describing just what a party waives. The three cases just mentioned, for example, use the terms "question," "theory," and "issue" to capture what is being waived. In other cases, we use "argument" and "contention." *See United States v. Harrison*, 689 F.3d 301, 310 (3d Cir. 2012) ("It is well-settled that suppression arguments raised for the first

8

time on appeal are waived absent good cause."); *United States v. Tracey*, 597 F.3d 140, 149–50 (3d Cir. 2010) (concluding alternate "argument" was waived); *United States v. Frank*, 864 F.2d 992, 1006 (3d Cir. 1988) ("Since this contention was not raised in his suppression motion as a ground for suppression it is waived."). Other circuits have been similarly inconsistent, using many of the words we do as well as others, such as "ground" and "basis." *See, e.g.*, *United States v. Hewlett*, 395 F.3d 458, 460 (D.C. Cir. 2005).[4]

To be sure, some of these words are synonyms. But not all of them are. The crucial difference between these words goes to the degree of specificity they entail. In our view, the synonymous words "question" and

---

[4] *See also, e.g.*, *United States v. Torres*, 162 F.3d 6, 11 (1st Cir. 1998) (using theory and ground); *United States v. Schwartz*, 535 F.2d 160, 163 (2d Cir. 1976) (using ground); *United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2006) (using issue and argument); *United States v. King*, 627 F.3d 641, 647 (7th Cir. 2010) (using argument and issue); *United States v. Green*, 691 F.3d 960, 965 (8th Cir. 2012) (using argument and issue); *United States v. Scott*, 705 F.3d 410, 415–16 (9th Cir. 2012) (using theory, issue, and argument); *United States v. Burke*, 633 F.3d 984, 987–88 (10th Cir. 2011) (using argument); *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988) (using ground).

"issue" are broader in scope than the synonymous words "argument," "contention," "theory," "ground," or "basis" in that the former words can encompass more than one of the latter. This is best seen in the Supreme Court's interpretation of Rule 14.1(a). That rule explains that "[o]nly the *questions* set out in the petition [for a writ of certiorari] . . . will be considered by the Court." Sup. Ct. R. 14.1(a) (emphasis added). In *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995), the Court explained that while it "will not reach questions not fairly included in the petition," it will reach "argument[s]" that are "fairly embraced within the question set forth in the petition." *Id.* at 379–80. Questions are therefore broader in scope than arguments—which the Court used synonymously with theory, *id.* at 380—because the former can include more than one of the latter.

"Issue" is akin to "question" because it is the term in our procedural rules that serves the same role as a "question" in the Supreme Court's rules. Rule 28(a)(5) requires the appellant's brief to provide "a statement of the *issues* presented for review." Fed. R. App. P. 28(a)(5) (emphasis added). This rule is based on the 1966 version of Supreme Court Rule 40, *id.* 1967 advisory committee's note, which stated that the appellant's brief must include the "*questions* presented for review," Sup. Ct. R. 40(d)(1), 388 U.S. 970–71 (1966) (emphasis added); *see also* Sup. Ct. R. 24.1(a) (retaining this requirement). Given the identical role the words serve in

10

these procedural rules, it is reasonable to treat them as being coextensive in scope. That is, issues and questions may include multiple legal arguments, contentions, theories, grounds, or bases.

With this clarification, we are able to reframe the debate before us regarding waiver of suppression arguments: is raising an issue in a suppression motion or hearing sufficient to preserve any argument within that issue? Our decisions in *Lockett*, *Rose*, and *Tracey* show that it is not. In *Lockett*, we concluded that the defendant's appellate argument of limited consent was waived although he had raised the issue of consent in the District Court through a voluntariness argument. 406 F.3d at 211–12. In *Rose*, we held as waived an appellate argument that a warrant authorized an unlawful general search despite the issue of the warrant's validity being raised in the District Court through three different challenges. 538 F.3d at 177 (recounting the defendant's District Court arguments that the warrant permitted a search for items unrelated to a crime, protected by the First Amendment, and already available to the government). And in *Tracey*, we determined that the government waived its appellate argument that a defective warrant was cured through an unincorporated, accompanying affidavit that was sufficiently narrow and confined the search performed even though the issue of cure by the affidavit had been raised in the District Court through the government's argument that the warrant

11

incorporated the affidavit. *Tracey*, 597 F.3d at 149–50.

These cases show that raising an issue in the District Court is insufficient to preserve for appeal all arguments bearing on that issue. Instead, to preserve a suppression argument, a party must make the same argument in the District Court that he makes on appeal. To be sure, we have made statements suggesting otherwise. The waiver majority in *Dupree* suggests that an argument is preserved if it is within the "overarching question" raised in the District Court. 617 F.3d at 740 (Fisher, J., concurring in part and concurring in judgment). This suggestion, however, is in conflict with our earlier decisions in *Lockett*, *Rose*, and *Tracey* from which we derive our holding that raising an issue is not sufficient to preserve all arguments within the issue. Because these cases were decided earlier, the rule derived from them is controlling. *See Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) ("[T]his Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedent[].").

At first glance, *Lockett* too might be viewed as authority supporting an expansive approach. There, we stated that appellate suppression arguments must be "substantially the same" as those made in the District Court. 406 F.3d at 212. "Substantially" suggests some degree of latitude. The case makes clear, however, that this flexibility does not extend to the substance of the

arguments. This is seen in its holding as waived a defendant's argument that his consent to a search was limited when the issue of consent had been raised in the District Court through an argument that his consent was not given voluntarily. *Id.* at 211–12. If the word "substantially" actually meant that the parties could change their substantive arguments, we would have come to the opposite conclusion in *Lockett*. After all, the scope of consent and the voluntariness of consent both fit within the general issue of whether there was consent for a search.

Rather than substantive flexibility, the latitude suggested by *Lockett* pertains to the parties' ability to control how they present and support their preserved arguments. Parties are free, for example, to place greater emphasis and more fully explain an argument on appeal than they did in the District Court. They may even, within the bounds of reason, reframe their argument.[5] As explained, however, they may not change the substance of those arguments.

---

[5] There is a limit, however, on the extent to which an argument may be reframed. Revisions at some point become differences in kind, presenting a completely new argument altogether. Because such modifications would subvert the very purpose of the waiver doctrine as it applies to suppression motions, they cannot be countenanced.

13

B.   Differentiating between Issues and Arguments and between Different Arguments

Our conclusion that arguments rather than issues are what parties preserve or waive is helpful, of course, only so far as there is a meaningful way to distinguish between issues and arguments as well as between different arguments. The distinction between issues and arguments goes to the heart of the dispute in this case: the degree of particularity required. This degree is exacting because legal arguments—as well as legal theories, grounds, and bases—are the most basic building blocks of legal reasoning.

In *Tracey*, we distinguished between issues and arguments.  The issue was whether an affidavit cured a warrant that lacked particularity. *See* 597 F.3d at 146–47. The government offered two arguments for why the affidavit was curative: it was incorporated into the warrant and if not, it was narrower than the warrant and controlled the scope of the search. *Id.* at 146–49. These are arguments because they do not contain subsidiary legal frameworks of analysis. To be sure, either of these arguments could be lacking for different factual reasons—the affidavit, for instance, may have been narrower but not sufficiently controlling of the search; or it may have been too broad even though it was controlling. But these factual differences are irrelevant for distinguishing between issues and arguments because the facts relevant to an argument will always be relevant

14

to the issue containing the argument.

*Tracey* instructs that the determination of whether the legal challenge is an issue or an argument for purposes of waiver depends on whether it can be distilled into separate lines of legal analysis.[6]  A legal challenge that presents multiple avenues for granting relief is a broad issue.  But if the legal challenge presents a single point of contention, which may not be recast or reframed to address a conceptually distinct contention, then what has been advanced is an argument.

Once the arguments made in the District Court and in the Court of Appeals have been identified, the next task is to determine if they are the same argument. This is often self-evident, but our precedents reveal at least two characteristics that identical arguments always have. First, they depend on the same legal rule or standard. *See Tracey*, 597 F.3d at 149–50 (concluding that an argument was waived because it invoked a different legal basis for curing a warrant lacking particularity from the one used in the District Court). Second, the arguments depend on the same facts. *Cf. Rose*, 538 F.3d at 183 (holding that waiver is the appropriate remedy for failing to raise a

---

[6] We recognize that in some instances an issue may be coextensive with an argument, presenting a single point of contention.  In such a case, advancement of the issue before the district court will be sufficient to preserve the matter for appeal.

15

suppression argument in part because the party opposing the new argument "has lost its chance to introduce valuable evidence in opposition to the suppression motion"). If two arguments do not share one of these characteristics, they are not the same and the raising of one will not preserve the other. Put differently, to preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court.

C.     Application

Applying this framework reveals the unavailing nature of Joseph's contention that he preserved his mens rea argument because he raised probable cause in the District Court. To make an arrest based on probable cause, the arresting officer must have probable cause for each element of the offense. *See Wright v. City of Philadelphia*, 409 F.3d 595, 602–03 (3d Cir. 2005). Probable cause can consequently be distilled into more particular legal arguments related to each element involved. This case illustrates that proposition well, as the parties' merits arguments on appeal focus solely on what is legally sufficient to establish probable cause for the requisite intent to defraud in cases involving counterfeit currency—specifically whether the passing of such bills alone suffices to show that intent. *See* Appellant Br. at 21–22; Appellee Br. at 24–26. Absent from their discussion are arguments related to the actus

16

reus element of the relevant criminal code. *See* 18 U.S.C. § 472 (criminalizing "[w]hoever, with intent to defraud, passes, utters, publishes, or sells[;] or attempts to pass, utter, publish, or sell . . . any falsely made, forged, counterfeited, or altered obligation or other security of the United States"). This illustrates that a probable-cause issue can be distilled into separate arguments—arguments whether the officers had probable cause for each element of the offense. Because we conclude that probable cause is an issue rather than an argument, Joseph did not preserve his mens rea argument simply by raising a probable-cause-related argument in the District Court.

Accordingly, Joseph preserved his mens rea argument only if it is the same argument he raised in the District Court. And it is not. In that court, he argued that the officers lacked evidence of an actus reus element—evidence that the bills were counterfeit. This evidence-of-counterfeit argument is not the same as his appellate evidence-of-intent argument because the arguments lack both of the characteristics described above. First, they do not depend on the same legal rule or standard: Joseph's District Court argument focused on the legal standards related to the actus reus element of involving counterfeit currency for the offense while his appellate argument relies on the standards for showing the requisite mental state. Second, Joseph's two arguments depend on different facts: the evidence relevant to the bad act (the

17

mismatched watermark the officers discovered by shining their flashlights on the bills) is quite different from the evidence relevant to the culpable state of mind (Joseph's suspicious behavior in the club of which the officers might have been unaware). The absence of these characteristics demonstrates that Joseph's appellate argument is not the same suppression argument he raised in the District Court. It is therefore waived. *Rose*, 538 F.3d at 182.

III

Having held that Joseph waived the sole argument he makes on appeal, we will affirm the District Court.