**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3137
_____

ROBERT A. LINCOLN;
MARY O. LINCOLN,
                                        Appellants

v.

MAGNUM LAND SERVICES, LLC; BELMONT RESOURCES, LLC;
SINCLAIR OIL & GAS CO.; CHESAPEAKE APPALACHIA LLC;
CHESAPEAKE ENERGY CORPORATION;
STATOILHYDRO USA ONSHORE PROPERTIES, INC.,
and their heirs, executors personal reps, administrators, grantees,
successors, and assigns; and any all persons firms, associations,
or legal entities claiming right, title or interest by, from through,
or under the Defendants, or any of them

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3-12-cv-00576)
District Judge:  Honorable A. Richard Caputo

_____

Submitted under Third Circuit LAR 34.1(a)
on March 7, 2014

(Opinion filed: March 18, 2014)

Before:  RENDELL, SMITH and HARDIMAN, <u>Circuit Judges</u>.

**RENDELL**, <u>Circuit Judge</u>:

Appellants Robert and Mary Lincoln (the "Lincolns") brought this action to quiet title and for slander of title against Defendants Magnum Land Services, LLC ("Magnum"), Sinclair Oil & Gas Co. ("Sinclair"), Belmont Resources, LLC ("Belmont"), Chesapeake Appalachia, L.L.C. and Chesapeake Energy Corp. ("Chesapeake"), and Statoil USA Onshore Properties, Inc. ("Statoil") (collectively, "Defendants"). The District Court granted Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed the Lincolns' First Amended Complaint with prejudice. We will affirm.[1]

## I. BACKGROUND

The Lincolns owned three separate parcels of land in Tunkhannock Township, Wyoming County, Pennsylvania. (App. 24a.) On or around February 26, 2008, Magnum offered to lease the oil and gas rights to all three parcels, and provided the Lincolns with a proposed written lease. (App. 28a.) The Lincolns made changes to the proposed lease and returned it to Magnum as a counteroffer. (*Id*.) On or around March 26, 2008, Robert Lincoln notified agents for Magnum that he was withdrawing the counteroffer, and "confirmed . . . that neither [Magnum] nor [the Lincolns] had received anything

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

indicating that Magnum had accepted the counteroffer." (App. 29a.) Lincoln followed up the next day in an email confirming the revocation of the counteroffer. (*Id.*)

On March 31, 2008, an agent for Magnum contacted the Lincolns, inquiring as to whether they would accept a higher signing bonus in exchange for accepting the lease as Magnum had originally proposed. (*Id.*) According to the Lincolns, the agent indicated that Magnum would make the Lincolns a new offer, and would revise the lease to add additional protections not included in Magnum's original offer. (App. 99a.) Instead of a new offer, the Lincolns later received a check from Magnum in the amount of $71,362.50. (App. 29a.) The Lincolns marked the check "void" and returned it to Magnum, along with a letter confirming that they had withdrawn their counteroffer, noting that there was no legally binding contract between Magnum and themselves, and stating that they were rejecting the check. (App. 99a.)

On August 3, 2009, Magnum recorded the Lincolns' February 2008 counteroffer with the Wyoming County Recorder of Deeds. (App. 54a-60a.) On August 24, 2009, Magnum assigned the lease to Belmont, which recorded it on September 30, 2009. (App. 68-69.) Belmont assigned 50% of its interest in the lease to Sinclair, which assignment was recorded on November 9, 2009. (App. 72a-73a.) Sinclair and Belmont then assigned their portions of the lease to Chesapeake, which then recorded the leases on November 16, 2009 and November 18, 2009. (App. 77a-85a.) Chesapeake then assigned 32.5% of its interest in the lease to Statoil, which recorded the lease on May 19, 2010. (App. 86a-91a.)

3

In or around September 2009, Chesapeake offered oil and gas leases to various landowners in and around Wyoming County. The terms of the proposed leases were negotiated between Chesapeake and the Wyoming County Landowners Group (the "WCLG"). (App. 37a.) Around the same time, Robert Lincoln visited the Wyoming County Recorder of Deeds and learned that Magnum had recorded and assigned the February 2008 counteroffer (hereinafter, the "Lease"). (App. 38a.) Lincoln believed that the Lease was invalid and cast a cloud on his title to the property which might prevent him from joining the WCLG and leasing his oil and gas rights to Chesapeake at the more advantageous terms being offered to WCLG members. (*Id.*)

Approximately one year later, on September 13, 2010, the Lincolns filed an Affidavit Affecting Title to Real Estate with the Wyoming County Recorder of Deeds. The Affidavit noted that the recorded Lease was actually a counteroffer, and that it had been withdrawn prior to the time that Magnum recorded it. (App. 32a, 106a-07a.) The Lincolns mailed a copy of the Affidavit to Chesapeake on December 13, 2010. (App. 32a.) On September 28, 2011, Chesapeake and Statoil, the only holders of any interest in the Lease, filed a Release and Surrender of Oil and Gas Lease with the Wyoming County Recorder of Deeds, stating that they "release[d], relinquish[ed] and surrender[ed] all of [their] right, title and interest in and to" the Lincolns' property. (App. 94a.) In addition, despite having assigned all of its interest in the property away in October 2009 (App. 83a), Belmont, "out of an abundance of caution," *see* Belmont Br. 11, filed a Release and Surrender of Oil and Gas Lease in February 2012. (App. 27a.) No Defendant has asserted any interest in the property since that time.

4

On December 30, 2011, the Lincolns filed a quiet title claim under Pa. R. Civ. P. 1061 in the Court of Common Pleas of Wyoming County against all Defendants, seeking a declaration that the Lease was invalid, and that the Lincolns were the owners in fee simple of the property. (*See* Complaint in Action to Quiet Title, No. 3:12-cv-00576-ARC, Doc. 1-3, at 9-10.) The Lincolns also sought attorney's fees and costs. (*Id*. at 10.) Defendants Chesapeake and Statoil removed the action to federal district court on March 29, 2012. (App. 17a.) The same day, the Lincolns filed their First Amended Complaint in the Court of Common Pleas, adding, for the first time, a claim for Slander of Title. (*See* First Amended Complaint in Action to Quiet Title, No 3:12-cv-00576-ARC, Doc. 1-9, at 9-16). Chesapeake and Statoil filed an Amended Notice of Removal on April 24, 2012. (App. 18a.)

On April 26, 2012, Magnum, Belmont, Chesapeake and Statoil[2] all moved to dismiss the First Amended Complaint, arguing that: (1) the Lincolns' claim for slander of title was time-barred as it was not filed within one year of their becoming aware that Magnum had recorded their counteroffer as a lease; and (2) the Lincolns' quiet title action was moot because none of the Defendants were asserting any interest in the property at the time the Lincolns filed their First Amended Complaint. In addition,

---

[2] Defendant Sinclair did not file a motion to dismiss, and indeed, never filed an appearance in the proceedings below. (App. 9a.) While noting this, the District Court nevertheless dismissed the entirety of the First Amended Complaint, including the Lincolns' claim against Sinclair. Sinclair has filed a brief opposing the Lincolns' appeal jointly with Chesapeake and Statoil. It does not appear that the Lincolns ever moved for a default judgment against Sinclair for failing to answer the First Amended Complaint; nor do they raise the issue on appeal. Accordingly, we do not discuss Sinclair's lack of an appearance in the District Court herein.

Belmont, Chesapeake and Statoil argued that the Lincolns were not entitled to damages pursuant to Pa. R. Civ. P. 1066(4) because they failed to state a claim for quiet title.[3]

The District Court held that, because both Chesapeake and Statoil—the only defendants with any purported interest in the property at the time the Lincolns filed their Affidavit—had surrendered all rights and interests they had in the lease, and because no other defendants had any basis to assert a claim to the lease, there was no cloud on the Lincolns' title to the property. Accordingly, the Court dismissed the Lincolns' action to quiet title. *Lincoln v. Magnum Land Servs., LLC*, No. 3:12-CV-576, 2013 U.S. Dist. LEXIS 78893, at *12-13 (M.D. Pa. June 5, 2013). In addition, the District Court held that because the Lincolns had failed to bring their slander of title claim until March 2012—twenty-one months after the final assignment of the lease and more than two years after learning of Magnum's recording of the counteroffer in September 2009—the claim was time-barred by the applicable one-year statute of limitations for slander of title claims. *Id*. at *15-16.

The Lincolns filed this timely appeal, arguing: (1) the quiet title claim is not moot because one of the three parcels of land was misidentified by number in the Lease filed by Magnum and in the Release and Surrender documents and accordingly, a cloud remains on the title of that parcel; (2) the statute of limitations for slander of title remains unexpired on the purportedly misidentified parcel because a cloud remains on the title;

---

[3] Belmont, Chesapeake, and Statoil additionally argued that the Lincolns' claim against them for slander of title could not succeed because a slander of title claim requires malice, and none of these defendants knew that the lease was invalid when they recorded it. Because, as described below, we hold that the Lincolns' claim for slander of title was time-barred as against all Defendants, we do not reach this argument.

(3) the Lincolns have a valid claim for slander of title; and (4) the slander of title action is not time-barred "due to republication, the discovery rule and the continuing violation doctrine." (Lincoln Br. 6-7.)

## II. DISCUSSION

We exercise plenary review over a district court's dismissal of a complaint for failure to state a claim. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Id.* (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).

### A. Claim to Quiet Title

Apparently acceding to the District Court's holding that the Release and Surrender documents filed by Chesapeake and Statoil in September 2011 moot their claim for quiet title, the Lincolns present a new argument on appeal. They claim that both the Lease filed by Magnum and the Release and Surrender filed by Chesapeake and Statoil misidentified by number one of the parcels of property, and that therefore a cloud remains on the title of that parcel.[4] The Lincolns claim that the Magnum lease identified

---

[4] The Lincolns purported to drop their claim to quiet title against Belmont in their First Amended Complaint because Belmont filed a surrender and release of rights in February 2012. (App. 27a.) However, the Lincolns evidently continued to seek damages from Belmont in connection with the quiet title action. *See* 2013 U.S. Dist. LEXIS at *12 n.3. The District Court held that it would be "clearly inappropriate" to allow the Lincolns to collect damages based on a claim of action they no longer press. *See id.* ("As Plaintiffs no longer allege that Belmont engaged in any liability-creating conduct with respect to the quiet title claim, they can no longer seek damages from Belmont for that claim.").

the parcel as "26-058.0-02-00.00," and that the Release and Surrender identified it as "26-58-02-00-00." They claim that the correct designation is "#26-058.0-178-00-00-00." (Lincoln Br. 19.)

"It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." *Tri-M Grp., L.L.C. v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (internal quotation marks omitted). The Lincolns do not dispute that they did not advance any arguments with respect to the purported misidentification in their pleadings or elsewhere in the proceedings below.[5] The Lincolns disagree, however, that their arguments based on the misidentification are waived, pointing to general allegations in their First Amended Complaint regarding the purported cloud on their title and reiterating their claim for quiet title. *See* Lincoln Reply Br. 11. These allegations were entirely insufficient to put the District Court on notice of their current claim that a numerical misidentification continued to cloud their title as to one of the parcels. *See Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 608 (3d Cir. 2011) (the "crucial question" in deciding

---

Because the Lincolns have not done us the favor of specifying which defendants they contend are continuing to cloud their title, we will assume that they mean to include Belmont in this claim as well.

[5] Somewhat astoundingly, the Lincolns attempt to frame the issue for appeal by casting it as an error by the District Court in, presumably, failing to comb the record, identify the purported "misidentification," and hold, *sua sponte*, that the misidentification cast a cloud on the title of the parcel. *See* Lincoln Br. 18 ("[T]he District Court erred in failing to recognize that the Release and Surrender only applied to two of the parcels."). Of course, this is not the District Court's job. Rather, it was the Lincolns' duty to raise and explain each and every argument it wished to advance in support of its claims in the District Court. *See United States v. Chavez-Marquez*, 66 F.3d 259, 262 (10th Cir. 1995) ("[D]efendant asks this court to rule that a district court, upon learning the facts of the case, should propose legal theories sua sponte and rule on them. No such duty exists.").

8

whether an issue has been waived is whether the party "presented the argument with sufficient specificity to alert the district court") (citing *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005)).

The Lincolns further argue that we should decline to find waiver because the issues that would otherwise be waived are of public importance. (Lincoln Reply Br. 5.) They argue that "drillers [in the Marcellus Valley] have exploited, cheated and defrauded landowners in Pennsylvania. . . . It is in the public interest that such practices be brought into the public view and addressed by the courts." (Lincoln Reply Br. 9.) The Lincolns misread the public policy exception to waiver. The waived issue here is not the broader backdrop of the oil drilling industry in the Marcellus Valley, or even whether the Lincolns were treated unfairly by the Defendants in connection with their attempts to lease the Lincolns' oil and gas rights. The waived issue is simply whether an alleged numeric misidentification of one of the parcels of land in the Lease casts a cloud on the title of that parcel. This simply does not rise to the level of public importance that courts have deemed sufficient to overcome waiver. *See, e.g.*, *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (reaching otherwise waived argument where landowner's claims under a federal regulation aimed at preventing the discharge of storm water by a railroad onto neighboring land could have implications for numerous railroads and landowners); *Tri-M Grp.,* 638 F.3d at 416 (finding an issue of public importance where the otherwise waived issue "entail[ed] crucial and unresolved issues of state sovereignty and state procurement spending, and test[ed] the limits of the dormant Commerce Clause in this field.").

9

The Lincolns failed to advance any arguments with respect to the purported misidentification of the parcel in the District Court. Absent exceptional circumstances not present here, they cannot do so for the first time on appeal.[6]

## B. Slander of Title

The Lincolns claim that their slander of title claim is not time-barred "due to republication, the discovery rule and the continuing violation doctrine." (Lincoln Br. 25.) The first two arguments are nonsensical and in any case waived because the Lincolns did not raise them before the District Court. The last is precluded by our precedent.

With respect to the discovery rule, the Lincolns argue that the District Court agreed that they exercised reasonable diligence, "thereby providing an additional extension to the statute of limitations." (Lincoln Br. 26-27.) We are confounded by this assertion, as the District Court's opinion contains no reference to the discovery rule or to any "reasonable diligence" on the part of the Lincolns. Of course this is not surprising, as the Lincolns did not advance any argument based on the discovery rule in the District Court; accordingly, it is waived. Indeed, the Lincolns appear to have abandoned this

---

[6] Defendants refute the Lincolns' argument that the alleged misidentification clouds the title to the parcel on several grounds. In addition to their correct assertion that the argument is waived because the Lincolns failed to raise it on appeal, Defendants urge that the argument is factually incorrect because the documents at issue do not misidentify the parcel, that the purported misidentification is incapable of clouding the title under Pennsylvania law, and that in any case, any purported misidentification does not change the fact that there is simply no actual controversy regarding title. (*See, e.g.*, Chesapeake, et al. Br. 27-34; Magnum Br. 13-19.) Because we hold that the Lincolns failed to raise any arguments regarding an alleged misidentification of the parcel in the District Court, we do not address Defendants' remaining arguments. For the same reason, we do not address the Lincolns' argument that the alleged misidentification somehow revives their claim for slander of title.

argument in their Reply Brief. *See* Lincoln Reply Br. 10-11 (omitting the discovery rule argument from the three issues that the Lincolns contend were not waived).[7]

As to republication, the Lincolns argue that the Release and Surrender filed by Chesapeake and Statoil on September 28, 2011, constituted a republication of the Lease, thereby extending the statute of limitations to September 27, 2012. (Lincoln Br. 25.) If we strain to do so, we can find some semblance of a republication argument in paragraph 60 of the First Amended Complaint and in the opposition to the Defendants' motions to dismiss. (*See* App. 31a, 248a.) However, in the District Court, the Lincolns argued that the *recording of the assignments* constituted republication. They never argued below that the *Release and Surrender* constituted a republication. The distinction is significant. As the District Court correctly noted, even if the recording of the assignments did constitute republication of a slanderous document affecting title, the Lincolns did not sue until more than a year after the last assignment was recorded. In other words, the republication argument advanced in the District Court, even if accepted, did not revive the Lincolns'

_____

[7] In any case, the Lincolns provide no support for their apparent proposition that their exercise of reasonable diligence in discovering that the Lease had been recorded would extend the statute of limitations for more than a year *after* such discovery. Confusingly, the Lincolns go on to assert that "the District Court correctly recognized that the statute of limitations ran from September 2010 and would have expired in September 2011." As an initial matter, the District Court did no such thing. Rather, the District Court noted that the Lincolns had filed their slander of title claim more than a year after the last recording of the lease in May 2010, and more than a year after becoming aware that Magnum had recorded the Lease in September 2009. 2013 U.S. Dist. LEXIS 78893, at *15-16. Second, even if the District Court had held that the statute of limitations began running in September 2010 and expired in September 2011, this would still mean that the Lincolns' slander of title claim was time-barred, as it was not filed until March of 2012. As such, the Lincolns fail entirely to explain how the discovery rule would advance their argument that their slander of title claim is not time-barred.

stale slander of title claim.  On the other hand, if the Release and Surrender filed on September 28, 2011, constituted a republication of a slanderous document, the statute of limitations would not expire until September 27, 2012, and their claim would be timely.  But this is not the argument the Lincolns advanced in the District Court.  *See United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013) ("[T]o preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule *and the same facts* as the argument presented in the District Court.") (emphasis added).  The Lincolns' republication argument in the District Court dealt with the dates the various assignments were recorded.  Their republication argument here depends on the date of the Surrender and Release.  Simply put, it is not the same argument.

The Lincolns contend that this argument was not waived because "[t]he facts of the republication" were contained in Lincoln's First Amended Complaint and in its opposition to Defendants' motions to dismiss.  (Lincoln Reply Br. 10-11.)   Of course, the mere fact that the Lincolns' pleadings included the factual basis from which an argument *could be* made does not mean that that argument *was in fact* made.  *See, e.g.*, *Gardiner v. V. I. Water & Power Auth.*, 145 F.3d 635, 646-47 (3d Cir. 1998).  Because the Lincolns failed to argue that the Release and Surrender documents constituted a republication of the Lease sufficient to revive the statute of limitations for their slander of title claim, that argument is waived.[8]

---

[8] We note that, even if this argument were not waived, we would be hard pressed to hold that a document *releasing and surrendering* any rights to the property could possibly constitute a false statement sufficient for a slander of title claim.  On the contrary, the documents made clear that neither Chesapeake or Statoil claimed any interest in the

12

Finally, we address the sole argument on appeal that the Lincolns have not waived—that under the "continuing violation" doctrine, their claim for slander of title "has never expired" and indeed remains alive because the Lease "remain[s] on the records of the Wyoming County Recorder of Deeds," and therefore "any potential driller would have been put on notice that it could not lease Lincoln's land." (Lincoln Br. 29.) Our precedent forecloses this argument. In *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001), the district court held that the statute of limitations on the plaintiffs' substantive due process claim began to run on the date the later of two allegedly improper liens was imposed. Because Plaintiffs did not bring their claim until after the statute of limitations had expired, their claim was time-barred. Plaintiffs appealed the ruling, alleging that the liens constituted "continuing violations of their substantive due process rights until they were either lifted or expunged." *Id*. at 293. We disagreed, holding that, "[t]he focus of the continuing violations doctrine is on affirmative acts of the defendants. . . . The mere existence of the liens does not amount to a continuing violation. Neither was the Township's refusal to remove the lien an affirmative act of a continuing violation." *Id*. The *Cowell* court explained that "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id*. (internal quotation marks omitted).[9]

property. Finally, we have previously held that "a reference [to an allegedly slanderous publication], without more, is not properly a republication." *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012).

[9] The *Cowell* court employed a three part test to determine whether a continuing violation existed: "(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—

Under our precedent in *Cowell*, the statute of limitations on the Lincolns' slander of title claim began to run, at the very latest, on May 19, 2010—the date the last assignment was recorded, as that was the date of the last "affirmative act" that could conceivably form the basis of a slander of title claim. Because the Lincolns did not bring their slander claim until March 29, 2012—more than 21 months after that date—their claim is time-barred.

## III. CONCLUSION

For the reasons set forth above, the District Court's order dismissing the First Amended Complaint is affirmed.

---

whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Cowell*, 263 F.3d at 292. We have since departed from that test to eliminate the requirement of permanence. *See Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 166-67 (3d Cir. 2013). However, nothing in *Mandel* suggests that *Cowell*'s requirement of an affirmative act, taking place inside the limitations period, is no longer required for the continuing violation theory to apply, and *Cowell* remains good law on that point.