**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3382
_____

CASSANDRA BALLARD-CARTER,
Appellant

v.

THE VANGUARD GROUP
___

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-05370)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 9, 2017

Before: CHAGARES, VANASKIE, and FUENTES, *Circuit Judges*

(Opinion Filed: August 9, 2017)
_____

OPINION[*]
_____

FUENTES, *Circuit Judge*.

The plaintiff-appellant, Cassandra Ballard-Carter, brought this case against her

employer, The Vanguard Group,[1] asserting a variety of violations of the Americans with

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Disabilities Act of 1990 ("ADA")[2] and the Pennsylvania Human Relations Act

("PHRA").[3]  After she withdrew many of her initial claims, the District Court granted

summary judgment in favor of Vanguard on the remaining hostile work environment and

failure to accommodate claims.  She appeals the District Court's decision as to her hostile

work environment claim only.  Because we agree with the District Court's finding that

the alleged hostile acts are not pervasive or severe enough to be actionable under the

ADA, we will affirm.

## I.

Ballard-Carter, who suffers from hearing difficulty and self-diagnosed dyslexia,

began working for Vanguard in 1996 as a processing associate.  In 2007, she was

promoted to Client Relationship Administrator ("CRA").  In that position she performed

daily tasks associated with the administration of clients' retirement benefit plans,

including corresponding with the clients directly.

In 2011, Ballard-Carter began reporting to Steve Bakey.  Her relationship with

Bakey was strained from the beginning, and she alleges that he was "overly petty about

[her] written work product," and would "snap[] at her in the aisle in front of others."[4]

Things came to a head in 2013, when Ballard-Carter became the CRA for a particular

client.  Both the client, and the Client Relationship Manager in charge of that client's

account, were dissatisfied with Ballard-Carter's work product, and complained to Bakey

---

[1] The Vanguard Group, Inc. is an investment management company headquartered in
Pennsylvania.  Ballard-Carter was employed at their Malvern, Pennsylvania office.
[2] 42 U.S.C. § 12101 *et seq.*
[3] 43 Pa. Cons. Stat. § 951 *et seq.*
[4] Appellant's Br. at 4 (quotations omitted).

that she "wasn't answering the [client's] question[s], she was answering [them] incorrectly, and she was writing in a way that [the client] couldn't understand what [Ballard-Carter] was trying to tell her."[5] Ballard-Carter was eventually removed from this account in October 2013, at the client's request.

During this period, Ballard-Carter's allegations of misconduct by Bakey intensified. He allegedly told her that she was "the only one on the team that he has issues with in terms of communication;"[6] pointed his finger at her and said "you just pissed me off" when she asked what he wanted to discuss during a one-on-one meeting;[7] and repeatedly told her that she was not promotable.[8] He was allegedly relentless in his criticism, and "would over and over again point out every single error that [she] made . . . and send it to [her]."[9] Ballard-Carter also alleges that Bakey made repeated comments about her hearing difficulty and dyslexia, including: "We just said that, you weren't listening;"[10] "Cassie, I don't hear you, you're supposed to be talking loudly at your desk;"[11] writing in an email to Ballard-Carter regarding a client, who informed them of an upcoming audit and the need for rapid responses, "I would add the audit [to a call log] so she knows we 'heard' her request. . . . I just think every opportunity we get to show

---

[5] J.A. 205.
[6] Appellant's Br. at 4-5.
[7] *Id.* at 5.
[8] *Id.* at 6.
[9] *Id*.
[10] *Id.* at 9.
[11] *Id*.

that we 'heard' her will reduce her need to save old emails;"[12] and calling her name and saying "That's right, I forgot you were deaf."[13]

Ballard-Carter alleges that she became ill as a result of the escalating hostility at work, and, in April 2014, she took medical leave, from which she never returned. In September 2015, within three months of receiving her Right to Sue letter from the Equal Employment Opportunity Commission, Ballard-Carter filed the pending case against Vanguard claiming disability discrimination, retaliation, hostile work environment, and failure to accommodate in violation of the ADA and PHRA, on the basis of her hearing difficulty and her perceived dyslexia. In May 2016, Vanguard moved for summary judgment. During the summary judgment hearing, Ballard-Carter withdrew her disability discrimination and retaliation claims,[14] and conceded that "the alleged dyslexia is not as a matter of law her disability for purposes of [her] claim[s]."[15] The District Court then entered summary judgment for Vanguard on the remaining hostile work environment and failure to accommodate claims. Ballard-Carter timely appealed.

---

[12] *Id.*; J.A. 394.
[13] Appellant's Br. at 9
[14] J.A. 399-40.
[15] J.A. 432.

**II.**[16]

To succeed on a hostile work environment claim under the ADA, the employee

must show the following five factors:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she
> was subject to unwelcome harassment; (3) the harassment was based on her
> disability or a request for an accommodation; (4) the harassment was
> sufficiently severe or pervasive to alter the conditions of her employment
> and to create an abusive working environment; and (5) [the employer] knew
> or should have known of the harassment and failed to take prompt effective
> remedial action.[17]

The District Court based its summary judgment on factor 3—that Ballard-Carter

"is unable to show that she was subjected to severe or pervasive harassment."  We

agree.[18]

---

[16] The District Court had jurisdiction over the ADA claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367.  We have jurisdiction over this appeal under 28 U.S.C. § 1291.  We review *de novo* the District Court's grant of summary judgment. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002).  Summary judgment is appropriate only when, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[17] *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999).

[18] Ballard-Carter raises two arguments that were either not raised or forfeited in the District Court.  She now argues that she suffered a hostile work environment due to her perceived dyslexia and/or due to her requests for accommodation for her hearing impairment.  She has not adequately preserved either theory for appeal. *See U.S. v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013) ("[F]or parties to preserve an argument for appeal, they must have raised the same argument in the District Court—merely raising an issue that encompasses the appellate argument is not enough.").  Furthermore, we do not believe that "manifest injustice would result from the failure to consider the new issue[s]." *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir. 1981).  Consequently, we will only address her argument that the District Court erred in granting summary judgment on her hearing-impairment-based hostile work environment claim.

The ADA anti-discrimination mandate does not require a happy or even a civil workplace.[19]  Instead, it only prohibits harassment so severe or pervasive as "to alter the conditions of the victim's employment and create an abusive working environment."[20] "[O]rdinary tribulations of the workplace, such as the sporadic use of abusive language, [] jokes, and occasional teasing" are not enough to sustain a hostile work environment claim.[21]  To determine if the harassment meets the "severe or pervasive" standard, we consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."[22]

The alleged harassment here is neither severe nor pervasive.  During the hearing before the District Court, Ballard-Carter conceded that only the following four comments form the basis of her hostile work environment claim: (1) "Oh, that's right, I forgot you were deaf," (2) "you're supposed to be talking loudly at your desk," (3) "we just said that you weren't listening," and (4) quotations around the word "heard" in an email to

---

[19] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).
[20] *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (analyzing Title VII); *Walton*, 168 F.3d at 666 (equating the hostile work environment analysis in Title VII and the ADA); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1997) ("In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.").
[21] *Faragher*, 524 U.S. at 788.
[22] *Harris*, 510 U.S at 23.

Ballard-Carter regarding a client request.[23] At best, some of these comments may be considered uncivil, but certainly none are so severe as to alter the conditions of her employment, and four comments over the course of three years cannot be considered pervasive.[24]

On appeal, Ballard-Carter finds fault in the District Court's laser focus on these four comments, and requests that we consider "all of the other instances of harassment" she suffered from 2012 through 2013.[25] In light of Ballard-Carter's clear concession during the hearing that she is relying only on those four comments for her hostile work environment claim, we find no error on the part of the District Court in considering only those four comments. In any event, even if we were to consider "the other instances of harassment," Ballard-Carter's own recitation of the facts make plain that Blakey's remarks, while impolite, were not driven by discriminatory animus based on her hearing impairment. Consequently, these additional comments cannot be used to sustain a hostile work environment claim under the ADA.

### III.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[23] J.A. 346-47; J.A. 443-444.

[24] *See, e.g.*, *Walton v. Mental Health Ass'n*, No. 96-5682, 1997 WL 717053, at *1, *13 (E.D. Pa. Nov. 17, 1997) (granting summary judgment on a hostile work environment claim brought under the ADA by an employee suffering depression and obesity because the alleged comments made by her supervisor, such as "you have to separate your problems, symptoms from the project," "you have to learn to manage your illness," "you have to make a decision of either you can work or you're either too sick to work," and "people with your symptoms are manic depressive" were not severe or pervasive), *aff'd*, 168 F.3d at 667 (agreeing that these comments taken together fall "far short" of the standard elucidated in *Harris*).

[25] Appellant's Br. at 21.