**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4117
_____

UNITED STATES OF AMERICA

v.

FELIX ANGEL-HUERTA,
                                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-16-cr-00035-001)
District Judge: Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2017
_____

Before: SHWARTZ and ROTH, Circuit Judges, and PAPPERT, District Judge.[*]

(Filed: December 1, 2017)

_____

OPINION[**]
_____

SHWARTZ, Circuit Judge.

---

[*] Honorable Gerald J. Pappert, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Felix Angel-Huerta appeals his conviction and sentence for illegal reentry into the United States after deportation. He challenges the District Court's orders denying his motions to dismiss the indictment based on a collateral attack on his removal order and to strike a juror for cause. Because Angel-Huerta waived the argument he now raises in support of his collateral challenge and he was not denied equal protection when the District Court refused to strike the juror for cause, we will affirm.

I

A

Angel-Huerta is a native and citizen of Mexico who entered the United States illegally in 2000. In 2006, he was convicted of violating California's domestic violence laws and sentenced to sixteen months' imprisonment. In 2007, Immigration and Customs Enforcement ("ICE") issued a Notice of Intent to Issue a Final Administrative Removal Order (the "NOI") against Angel-Huerta and transported him from a state prison at Tehachapi, California, to an immigrant detention facility in Bakersfield, California. Because an immigration officer determined that Angel-Huerta's domestic violence crime was an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), he was subject to expedited removal pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(a), (b); see also Avila v. Att'y Gen., 826 F.3d 662, 664, 666 (3d Cir. 2016).

An immigration officer, Sandra Kroman (then Sandra Alvarado), interviewed Angel-Huerta and explained the NOI in Spanish because he speaks minimal English. He acknowledged on the NOI that he was deportable, waived his right to challenge his

2

deportation or to seek withholding of removal, and confirmed that he wished to be removed to Mexico. Kroman and Angel-Huerta both signed the NOI and a supervisory officer reviewed the NOI and signed a Final Administrative Removal Order, which authorized Angel-Huerta's removal to Mexico. Angel-Huerta was then flown to Ontario, California and driven to the San Ysidro port of entry, where he walked across the border into Mexico.

Angel-Huerta returned to the United States in 2008, and in January 2016, ICE officers found him while looking for another person.

B

A grand jury returned a one-count indictment, charging Angel-Huerta with reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). He moved to dismiss the indictment by collaterally attacking his 2007 removal proceedings. He asserted that he was presented with the NOI only when he was discharged from the Tehachapi prison, that it was never translated into or explained to him in Spanish, and that he was never informed of his rights to challenge the aggravated-felony designation, have a hearing before an immigration judge, be represented by counsel at a hearing, or obtain an extension of time for judicial review. Angel-Huerta thus argued that his removal order resulted from fundamentally unfair proceedings and, more specifically, that his waiver was invalid because the NOI was not translated into Spanish.

The District Court held an evidentiary hearing on the motion. Angel-Huerta testified that a man who he later realized was an immigration officer presented him with the NOI, spoke only in English, and did not explain the form. He further stated that he

3

never met with a woman from ICE, the only person who spoke to him in Spanish was the person who gave him clothes when he left the Tehachapi facility, and no one explained to him before he arrived at the airport that he was being deported.

The Government presented ICE Officer Kroman. Although Kroman testified that she could not specifically remember meeting with Angel-Huerta, she said that she was sure that she did based on the removal paperwork and the fact that she processed individuals only at Bakersfield, not Tehachapi. Kroman is a native Spanish speaker and has a bachelor's degree in Spanish. She stated that it was her practice to explain the NOI in the language the alien was most comfortable with, and, rather than translate word-for-word, "try to explain it as basic as I can to make sure that they're understanding what I'm trying to explain," App. 100. She "always tr[ied] to make eye contact and . . . ask periodically if he's understanding what I'm talking about," App. 103, explaining "every part" of the form and "get[ting] [her] point across as to what [she was] trying to translate," App. 120-21. After informing the alien of the charges, she would explain that the alien would not be seeing an immigration judge, that he would be removed, and that he had the right to an attorney, but if he could not afford a lawyer that a list of free legal service providers would be provided to him. She explained all "the rights and responsibilities" on the form, including that he had a right to an appeal. App. 106. Finally, she asked the alien whether he wanted to contest his deportation; if so, she noted that he would have to meet one of the grounds for doing so, and if not, she proceeded to the waiver. As to the waiver, she explained that the alien would be admitting the charges, was deportable, did not wish to appeal, waived his rights, and wished to be removed. She

4

also noted the alien's native country for removal purposes. Angel-Huerta's NOI indicates that it was explained to him in Spanish. Kroman further testified that a photograph taken of Angel-Huerta during the removal proceedings was taken in the processing room at the Bakersfield facility, and that the photo could not have been taken at Tehachapi because ICE officers are not permitted to bring cameras into that prison.

At the close of the hearing, defense counsel said that Angel-Huerta's memory was perhaps confused as to what happened at Tehachapi and what happened at Bakersfield but that her written motion was consistent with Angel-Huerta's testimony. She argued that he signed documents without a full awareness that he was waiving his rights and that the lack of a valid waiver vitiates the order of removal.

The District Court denied the motion to dismiss the indictment, stating that "[a]n [e]xplanation will follow." App. 8. The Court provided its reasons in an opinion issued in connection with the Government's request for a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on Angel-Huerta's hearing testimony. The Court found that the NOI and Kroman's testimony were sufficient to undercut Angel-Huerta's testimony and defeat the motion to dismiss the indictment where the burden was on the defense.[1]

In addition to challenging the District Court's ruling on his collateral attack, Angel-Huerta asserts that the District Court erred during jury selection. During voir dire,

---

[1] The Court declined, however, to enhance Angel-Huerta's sentence because the Government failed to meet its burden to show that Angel-Huerta testified with bad intent, which the Court held was required for the enhancement.

5

the District Court asked the venire whether "any of you have opinions about immigration or the immigration laws that might make you unable to decide the case on the evidence presented and the laws as stated by me?," App. 163, and "[w]ould the religion, race, color, sex, or ethnic background of a witness influence whether you believe his or her testimony," App. 164. No juror answered affirmatively or indicated any concern. The jurors were also asked about their contact with the criminal justice system. Juror 6 explained that his car was stolen in the 1980s. He said that "it didn't go well. We caught the gentleman, and they found me in contempt of court because they told me I was picking on him because he was a different nationality. And I said I didn't care if the guy was green; he stole my car. That's when I got found in contempt of court." App. 189. Juror 6 said that this happened in Pennsylvania state court and no sanctions were imposed. Defense counsel asked the Court for permission to check the state court's records about Juror 6's contempt proceedings and moved to strike Juror 6 on the ground that he was bitter because he was accused of being prejudiced and Angel-Huerta is Hispanic. The District Court denied both requests. The defense used all ten of its peremptory strikes, including one against Juror 6.

The jury found Angel-Huerta guilty, and he was sentenced to twenty-four months' imprisonment followed by three years' supervised release. He appeals.

II[2]

A

Angel-Huerta argues that the District Court erred in denying his collateral challenge to the 2007 removal order, which he advanced as the basis to dismiss the indictment. Acknowledging for the first time on appeal that he met with Kroman at the Bakersfield facility, Angel-Huerta now argues that his waiver of rights was invalid because he received a "rushed and incomplete" translation of the NOI. Appellant's Br. 25. This deficient procedure, he argues, invalidates his prior deportation and requires dismissal of the indictment.

To preserve an argument for appeal, a party must have raised the same argument in the district court. United States v. Joseph, 730 F.3d 336, 337 (3d Cir. 2013). In other words, the argument presented on appeal "must depend on both the same legal rule and the same facts as the argument presented in the District Court." Id. at 342.

Angel-Huerta waived the argument he presents on appeal because it depends on facts different from those underlying the argument he made in the District Court, and would thus require different findings of fact and conclusions of law. Before the District Court, Angel-Huerta asserted that he received no translation of the NOI, met briefly only with a male immigration officer at Tehachapi, and was not advised about his rights or the waiver. Angel Huerta did not challenge the adequacy of the translation because he denied that it or any of the other matters associated with the NOI ever occurred and thus

_____

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

7

presented the District Court with, essentially, the question whether he received any process at all. Before us, he does not dispute that he met with Kroman at the Bakersfield facility or that he was given some translation and explanation of the NOI and his rights. Rather, he argues that the translation and the agent's explanation were inadequate. Because his argument on appeal depends on different facts and different legal rules, it has been waived. See id. at 337, 342.[3]

---

[3] We therefore need not reach the merits of Angel-Huerta's collateral attack. Even if we did, we would conclude that it fails.

An alien may collaterally attack a prior deportation order, United States v. Mendoza-Lopez, 481 US. 828, 839 (1987), but to do so successfully, he must show: "that (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair," 8 U.S.C. § 1326(d); see also United States v. Charleswell, 456 F.3d 347, 351 (3d Cir. 2006) (applying these requirements). Angel-Huerta argues that he meets all three collateral-attack requirements: the first two because his waiver of rights was not knowing or intelligent because the translation was inadequate, and the third because the translation he received was a core procedural deficiency that prejudiced him.

As to the adequacy of the translation, an immigration officer "must either provide the alien with a written translation of the [NOI] or explain the contents of the [NOI] to the alien in the alien's native language or in a language that the alien understands." 8 C.F.R. § 238.1(b)(2)(v). Here, the regulation was satisfied because Kroman—a native Spanish-speaker with a college degree in Spanish—explained the NOI to Angel-Huerta in Spanish. Since there is no requirement the NOI be translated verbatim and Kroman's undisputed testimony concerning the translation reflects that she "explain[ed] the contents of the [NOI] to [Angel-Huerta] in [his] native language," id., even on de novo review we would conclude that no "fundamental error occurred," Charleswell, 456 F.3d at 358; cf., e.g., United States v. Lopez-Collazo, 824 F.3d 453, 461-62 (4th Cir. 2016) (concluding that the alien established a due process violation because he was not provided any translation of the Notice of Intent in Spanish, his native language, but that he had not suffered prejudice because he was not eligible for relief from removal due to his conviction for an aggravated felony); United States v. Reyes-Bonilla, 671 F.3d 1036, 1044-45 (9th Cir. 2012) (concluding that the alien's waiver of his right to appeal was not considered and intelligent because, although the NOI indicated that it was "explained and/or served" to him in Spanish, his native language, "the Government failed to adduce

8

B

Angel-Huerta also argues that the District Court erred in denying his motion to strike Juror 6 for cause and, as a result, he was denied equal protection in the jury-selection process. His claim fails.

We review the District Court's jury voir dire, including its denial of a motion to strike a juror for cause, for abuse of discretion. United States v. Hodge, 870 F.3d 184, 203 (3d Cir. 2017). Angel-Huerta is right that the administration of justice includes ensuring a defendant is tried by an impartial jury free from racial or ethnic bias. See, e.g., Pena-Rodriguez v. Colorado, 137 S. Ct. 855, 867-69 (2017). However, his argument that he was deprived such a jury falls short because he does not assert—nor is there any indication in the record—that any of the jurors who were actually empaneled were biased. Hodge, 870 F.3d at 203. Moreover, by exercising a peremptory strike against Juror 6, Angel-Huerta did not "lose a peremptory challenge. Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury." United States v. Martinez-Salazar, 528 U.S. 304, 315-16 (2000). Where, as here, "the defendant elects to cure . . . an [alleged] error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or

---

evidence suggesting that the notice was in fact explained in Spanish" and "there [was] no evidence as to the extent of the explanation given or [the officer's] ability to communicate in Spanish").

9

constitutional right." Id. at 307.  Thus, the District Court's order denying his motion to strike Juror 6 did not deny Angel-Huerta equal protection.

## III

For the foregoing reasons, we will affirm.