

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-1998

# Hess v. Mazurkiewicz

Precedential or Non-Precedential:

Docket 96-3350

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Hess v. Mazurkiewicz" (1998). *1998 Decisions.* Paper 25.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/25

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3350

GARY LEE HESS,

     Appellant,

v.

J.F. MAZURKIEWICZ, Supt.; THE ATTORNEY GENERAL
OF THE COMMONWEALTH OF PENNSYLVANIA

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 94-cv-00237J)

ARGUED NOVEMBER 20, 1997

BEFORE: SCIRICA and LEWIS, Circuit Judges,
and POLLAK,* District Judge.

(Filed February 9, 1998)

     Pam E. Goldman (ARGUED)
     Post Office Box 81042
     Pittsburgh, PA 15217

Attorney for Appellant

_____

*Honorable Louis H. Pollak, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Jerome T. Foerster (ARGUED)
Office of Attorney General of
 Pennsylvania
Strawberry Square
15th Floor
Harrisburg, PA 17120

 Attorney for Appellees

OPINION OF THE COURT

LEWIS, Circuit Judge.

Gary Lee Hess appeals from the district court's denial of
his habeas corpus petition, raising two related claims. First,
he alleges that trial counsel's performance was deficient
due to a decision not to call certain witnesses. Second,
Hess contends that his lawyer labored under a conflict of
interest caused by his simultaneous representation of the
victims' father in another case, and that this conflict
impermissibly tainted counsel's performance during Hess's
trial. We conclude that Hess's attorney did not violate
professional standards by not calling additional witnesses
at trial. Because the record does not reveal whether Hess
preserved his conflict of interest claim, however, we will
remand the remainder of the case to the district court for
consideration of whether this claim has been exhausted.

I.

Hess was convicted of multiple counts of sexual
misconduct with the minor children of his sister, Barbara
Becker. Hess's brother-in-law, Thomas Becker ("Becker"), is
the father of two of the victims. When Hess's case went to
trial, his attorney, Mr. Ling, also represented Becker on
unrelated drug charges. Hess asserts that due to a conflict
of interest, Ling failed to interview potential witnesses who
would have stated that Becker, not Hess, actually abused
the victims. In particular, Hess alleges that Thomas Hafer,
Becker's cousin, would have testified that Becker gave the
children drugs and then sexually molested them. Hess also
contends that Ling declined to investigate a supposed

deathbed statement by the children's mother, which inculpated her husband and suggested that he might have framed Hess.1

Hess maintains that he asked Ling to call Becker and Hafer as witnesses. Ling declined to do so, and also did not investigate the possibility that Becker committed the acts of sexual abuse. In addition, Ling did not follow up on Hess's request that he interview co-workers who might support an alibi defense. As a result, Hess's defense consisted almost entirely of testimony from Hess himself and from his closest relatives.

II.

We address first the claim that Ling's representation fell below objective standards of reasonableness because he did not present the testimony of certain witnesses of whom he was aware. "Because ineffective assistance of counsel claims present mixed questions of law and fact . . . review is plenary." United States v. Kauffman, 109 F.3d 186, 187 (3d Cir. 1997). A defendant who alleges that counsel was ineffective due to strategic errors must show both that the attorney's performance was lacking, and that this deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984).

A.

The potential witnesses whom Hess argues Ling should have interviewed and called fall roughly into two categories: alibi witnesses and witnesses who would have testified that someone other than Hess committed the abuse. Addressing the latter category first, we conclude that Ling was not ineffective because he failed to call witnesses who would

_____

1. Apparently, the day before Barbara Becker died, a Children and Youth Services ("CYS") employee visited her at the hospital to discuss the accusations that Hess had abused the children. Hess alleges that Barbara Becker vehemently defended his innocence in the presence of the CYS worker and hospital personnel, and that she stated that Thomas Becker wished to implicate Hess. Hess maintains that Ling should have called the hospital personnel as disinterested witnesses.

3

have testified that either Thomas Becker or one of the children's babysitters sexually abused the victims. Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried. We therefore accord counsel's strategic trial decisions great deference. Because Ling's trial strategy allegedly resulted from incomplete investigation, however, his decisions are entitled to a lesser degree of deference. United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997). ("While counsel is entitled to substantial deference with respect to strategic judgment, an attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation.") More specifically,

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation [and] counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Government of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 1996) (quoting Strickland v. Washington, 466 U.S. 668, 690-91 (1984)).

Considering all the circumstances, Ling made "reasonable decision[s] that ma[de] particular investigations unnecessary." Id. Ling stated at the state post-conviction hearing that Becker would have been a hostile witness, and it is undisputed that Becker disliked Hess and wanted to see him convicted. We therefore agree with the district court's conclusion that Ling reasonably decided not to call Becker at trial. Further, Ling also testified that he rejected Hafer and other of the children's babysitters as witnesses only after concluding that the jury would find them unpersuasive because of their unsavory appearances or criminal records. Hess believes that the witnesses' questionable backgrounds actually could have helped his

4

case, because the jury might have inferred that these witnesses abused the children themselves. Hess overlooks the risks inherent in this strategy, however, since the witnesses were unlikely to cooperate with such a defense. Accordingly, we disagree that Ling's decision not to call these witnesses violated objective professional norms. Finally, Ling did not investigate Barbara Becker's alleged deathbed statement, which purported to exonerate Hess, because he believed it was not helpful, and would not have been admissible at trial.[2] We emphasize that our holding regarding these witnesses addresses only the issue of whether these actions necessarily violated objective standards of reasonableness, irrespective of any conflict of interest. Because, as described in Part III, a different legal analysis governs whether an actual conflict of interest adversely affects legal representation, this holding does not influence our review of Hess's conflict of interest claim.

We also hold that Ling was not ineffective for failing to call Gary Trivelpiece, a Pennsylvania State Police trooper, to testify regarding alleged inconsistencies in the victims' accounts. This, too, was a reasonable trial strategy, because Ling feared that Trivelpiece's testimony would alert the jury to additional charges pending against Hess in Blair County, Pennsylvania. Ling reasonably could have believed that the prejudicial effect of this information outweighed any benefit to be gained from Trivelpiece's testimony. We will not find counsel ineffective for adopting a litigation strategy based upon this reasonable professional judgment. See Strickland, 466 U.S. at 691.

B.

Furthermore, we reject Hess's claim that he is entitled to a retrial because counsel failed to call additional alibi witnesses. Even assuming that prevailing professional norms required Ling to present additional alibi testimony, Hess suffered no prejudice from this potential misstep. To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the

_____

2. See Transcript of Evidentiary Hearing, Court of Common Pleas of Bedford County, Pennsylvania, August 10, 1992, at 52.

trial's outcome would have been different. See id. at 694; see also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Hess suffered no prejudice from Ling's failure to call additional alibi witnesses because even without these witnesses, Ling presented a plausible, if ultimately unsuccessful, alibi defense through Hess, his wife and his mother, all of whom testified that Hess was never alone with the children. We do not dismiss lightly Hess's argument that "alibi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness." Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995). Nonetheless, in this case, because the crime occurred in the house where Hess lived, and the crucial issue was whether Hess spent time alone with the victims, it is unlikely that outside witnesses could have provided much relevant information. Moreover, Hess's argument assumes that the abuse only occurred during the brief period when he worked in another county and did not sleep in the Becker household on week nights. This is incorrect. The children testified to instances of abuse outside that time frame, and in any case, even when Hess worked out of town, he stayed at the Beckers' house on weekends. In fact, to present a complete alibi defense, Ling would have had to account for Hess's whereabouts during the course of over a year, something Hess himself admits was virtually impossible. Further, since Hess did not show that his proposed witnesses would have testified in his favor, we cannot conclude that they would have convinced the jury of his innocence. Accordingly, we hold that Ling's failure to interview and call at trial every alibi witness Hess recommended does not undermine our confidence in the verdict.

III.

Hess also asks us to grant a retrial on the grounds that Ling labored under an actual conflict of interest, which prevented a meaningful defense. We are not free to decide this question, because the record does not show whether

6

Hess raised this claim in previous appeals. See Landano v. Rafferty, 897 F.2d 661, 668 (3d Cir. 1990) (noting that a state prisoner must exhaust available state remedies before a federal court can consider his petition for habeas corpus). Neither the state courts' opinions nor the magistrate judge's reports and recommendations addressed this argument. It is clear, however, that Hess presented this claim to the district court, which considered only whether Ling was ineffective for failing to call Thomas Becker as a defense witness, and not whether an actual conflict of interest influenced Ling's decision not to investigate Becker's possible guilt. Accordingly, we deem it appropriate to remand this matter to the district court. Cf. Lace v. United States, 736 F.2d 48 (2d Cir. 1984) (remanding due to possible conflict of interest where defendant pleaded guilty on advice of counsel who also represented a potential witness for the prosecution).

On remand, the district court should first consider whether Hess's conflict of interest claim was "fairly presented" to the state courts, i.e., whether Hess presented a claim to the state courts which was based on the same facts and legal theory argued in his habeas petition. Landano, 897 F.3d at 668-69. If, however, that claim has been preserved, Hess's argument raises grave doubts about the reliability of the verdict.

The Sixth Amendment guarantees a criminal defendant counsel's "undivided loyalty free of conflict of interest." Government of Virgin Islands v. Zepp, 748 F.2d 125 (3d Cir. 1984). This requirement is an essential foundation of our adversarial system of justice, providing the minimum necessary to ensure that criminal defendants receive representation that "puts the government to its proofs in an adversarial manner." United States v. Moscony, 927 F.2d 742, 748 (3d Cir. 1991). When an attorney's representation is corrupted by conflicting interests, he or she "breaches the duty of loyalty, perhaps the most basic of counsel's duties." Strickland, 466 U.S. at 692. In such circumstances, the precise impact on the defense is so difficult to measure, and the possibility of prejudice so great, that we scrutinize the facts differently than in other ineffective assistance of counsel cases. Id.

7

Specifically, counsel is ineffective if he or she "actively represented conflicting interests" and an actual conflict of interest adversely affected the lawyer's performance, Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Unlike the case in which a defendant argues only that counsel pursuedflawed trial strategies, if the accused shows that an actual conflict of interest tainted counsel's performance, we will presume prejudice. Strickland, 466 U.S. at 692; United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988) ("To reach the level of constitutional ineffectiveness the conflict must cause some lapse in representation contrary to the defendant's interests but such lapse need not rise to the level of actual prejudice.") (citation omitted). If the accused can establish only a potential conflict of interest, prejudice must be proved. See Reed v. City of Chicago, 77 F.3d 1054, 1057 n.3 (8th Cir. 1996); Stoia v. United States, 22 F.3d 766, 770 (7th Cir. 1994).

If the district court reaches this claim on remand, Hess may show that an actual conflict of interest arose from Ling's dual representation if his "interests diverge[d] with respect to a material factual or legal issue or to a course of action such that the attorney finds himself in the untenable position of serving two clients with incompatible needs." United States v. Pungitore, 910 F.2d 1084, 1140 (3d Cir. 1990) (citations omitted). To do so, Hess must identify a plausible defense strategy that could have been pursued, and show that this alternative strategy inherently conflicted with, or was rejected due to, Ling's other loyalties or interests. See Gambino, 864 F.2d at 1070. Significantly, he need not show that the lapse in representation was so egregious as to violate objective standards for attorney performance. See id. (noting that accused may establish a lapse in representation merely by showing counsel rejected a defense that "possessed sufficient substance to be a viable alternative"). In focusing upon evidence that Becker molested the children, it would appear that Hess has identified a plausible defense which could have been pursued. But Hess also argues that his interests and Becker's conflicted, since implicating Becker in the crimes might have exculpated Hess, but could have resulted in charges being brought against Becker. See Freund v. Butterworth, 117 F.3d 1513 (11th Cir. 1997) (concluding

8

that actual conflict of interest adversely affected law firm's representation when firm rejected viable defense strategy of shifting blame for murder to its former client); see also Moscony, 910 F.2d at 749 (holding that a conflict of interest exists where a potential defense would implicate an attorney's other clients in crimes for which they might later be indicted). In addition, if witnesses testified that Thomas Becker molested the children after giving them drugs, that testimony might have been admissible, subject to the rules of evidence, in Becker's trial for drug offenses in which Ling was defense counsel. Furthermore, inculpating Becker in sexual misconduct almost certainly would have undermined Becker's trust in Ling, making Ling's representation of Becker more difficult.

Moreover, we note that our decision in United States v. Gambino, supra, does not foreclose a conclusion that Ling's performance suffered due to an actual conflict of interest. In Gambino, a defense attorney failed to present evidence suggesting that the defendant Gambino had been charged with possessing heroin that actually belonged to another of counsel's clients, Mazzara. This dual representation produced no actual conflict of interest, however, because the government already possessed the evidence implicating Mazzara in illegal drug activity. Thus the attorney never had to choose between presenting evidence helpful to Gambino's defense and possibly prejudicing Mazzara. Gambino, 864 F.2d at 1071. By contrast, nothing indicates that the police suspected Thomas Becker of child molestation. Furthermore, in Gambino, trial counsel did not suggest Mazzara was the source of the heroin because he believed this argument was so implausible that it would undermine the entire defense. Id. at 1071–72. Unlike Gambino's attorney, Ling has not testified that implicating Becker would be a specious defense; Ling merely stated that he did not call Becker as a witness because Becker disliked Hess. Even assuming Ling had legitimate reasons for not calling Becker to testify, that fact cannot explain his decision not to consider other witnesses, notably Thomas Hafer, who could have testified that Becker abused the victims.

9

IV.

For the foregoing reasons, we affirm the district court's denial of the writ of habeas corpus, insofar as it applies to Hess's claim that his representation fell below professional standards because counsel failed to call additional witnesses. The district court, however, did not explore fully Hess's claim that his lawyer rejected a defense inculpating another client due to an actual conflict of interest, which, in turn, may have deprived him of the right to counsel. Accordingly, the district court's order of June 5, 1996, is vacated in part, and this matter is remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit