Frank Robert CHESTER, Appellant,

v.

COMMISSIONER OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS; Superintendent Pittsburgh SCI; Superintendent Rockview SCI; District Attorney Bucks County; Honorable Edward Biester, Jr.

No. 13–9004.

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 2015.

Filed Jan. 29, 2015.

Daniel Silverman, Jules Epstein (Argued), Philadelphia, PA, for Appellant Frank Robert Chester.

Stephen B. Harris (Argued), Michelle A. Henry, Jill M. Graziano, District Attorney's Office, Doylestown, PA, for Appellees Commissioner of PA Department of Corrections; Superintendent Rockview SCI; Superintendent Pittsburgh SCI; District Attorney Bucks County; Edward G. Biester, Jr.

Before: AMBRO, JORDAN and HARDIMAN, Circuit Judges.

OPINION *

PER CURIAM.

Appellant Frank Robert Chester appeals from an order of the United States District Court for the Eastern District of Pennsylvania denying in part his federal habeas corpus petition. For the reasons that follow, we will affirm.

I. Background and Procedural History

Chester and codefendant Richard Laird met the victim, Anthony Milano, a gay man, in a bar in Bristol Township, Pennsylvania. After a night of drinking, the three men left together in Milano's car shortly after the bar closed. Milano's bloodied body was discovered in a wooded area the next evening. His skull was fractured and his throat slashed. Laird and Chester were arrested and tried together for first degree murder in 1988 in the Bucks County Court of Common Pleas. The Commonwealth theorized that the murder was motivated by anti-gay bias. Judge Edward G. Biester, Jr., presided over the trial. Chester retained, and was represented at trial by, attorney Thomas Edwards, Jr. The case was prosecuted by then-District Attorney, and now Court of Common Pleas Judge, Alan Rubenstein. Each defendant took the witness stand and each accused the other of the actual killing. The jury found them both guilty of first degree murder, kidnapping, aggravated assault, unlawful restraint, false imprisonment, conspiracy, and possession of an instrument of crime. At the penalty-stage hearing, the jury voted for a death sentence, which the trial court imposed. The Pennsylvania Supreme Court affirmed both criminal judgments in *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991). Chester's petition for writ of certiorari was denied by the United States Supreme Court on November 12, 1991.

On April 17, 1996, Chester, through new counsel, Jeffrey F. Orchard, filed a timely petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–46. It included a claim that Edwards provided constitutionally ineffective assistance before and during the trial because of alcohol abuse. In pursuit of this claim, Orchard sought in January 1997 to have the post-conviction judge (Judge Biester) unseal Edwards's 1996 attorney disciplinary suspension record. Supp.App. 1618. Orchard told the court that he had reason to believe that this record would provide information about

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Edwards's alcohol problem based on "interviews [he] conducted with individuals who are currently members of the bar, were members of the bar at the time, ... were in Bucks County, [and] were aware of the trial." *Id.* at 18. The post-conviction court denied the request to unseal and, following a hearing, denied the petition. The Pennsylvania Supreme Court affirmed, *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999), and denied·reargument on August 6, 1999.

Laird was the first to pursue habeas corpus relief in federal court. His petition was granted in part, the Commonwealth appealed, and we affirmed in *Laird v. Horn*, 414 F.3d 419 (3d Cir.2005). We held that the general accomplice liability instruction given to the jury did not properly instruct it to find specific intent as a prerequisite for accomplice liability; that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the prosecution of establishing that Laird individually had a specific intent to kill Milano; and that submission of the instruction to the jury was not harmless error. Laird was granted a new trial.[1]

Meanwhile, on August 16, 1999, only ten days after the Pennsylvania Supreme Court denied reargument in his PCRA case, Chester filed a pro se motion for appointment of counsel, a stay of execution, and leave to proceed *in forma pauperis* in federal court. Although this motion contained no claims or grounds for relief, it was listed on the docket as a habeas corpus petition.

On January 11, 2000, current habeas counsel were appointed to represent Chester. On April 30, 2001, they filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, which was listed on the docket as an amended habeas corpus petition. It included for the first time a claim that Edwards labored under a conflict of interest because he was facing a criminal charge-specifically, driving under the influence (hereinafter, "DUI") in the Bucks County Court of Common Pleas at the same time that he was representing Chester in his capital murder trial in the same jurisdiction. Chester contended that Edwards failed to disclose the conflict to him; that the trial judge knew or should have known of the conflict and failed to ask whether Chester wished to proceed with conflict-free counsel; and that the District Attorney knew of and failed to disclose the conflict. Habeas counsel requested an evidentiary hearing and stated that the investigation that uncovered the DUI began with their interview of Laird's trial counsel Ronald Elgart in December 2000. Elgart subsequently submitted an affidavit dated December 13, 2000, in which he stated that Edwards had a number of DUI arrests following the trial. This affidavit led current habeas counsel to investigate the Bucks County criminal docket in January 2001, and that is when they discovered Edwards's 1988 DUI arrest and prosecution.

Chester's federal petition was stayed while he pursued the unexhausted conflict-of-interest claim and claim of newly discovered evidence in a second state PCRA

---

1. The Commonwealth retried Laird in February 2007. On retrial, Laird stipulated that he murdered Milano "and, hence, the only remaining question for the jury was whether he acted with a specific intent to kill, thus making him guilty of first-degree murder." *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 624 (2010). The jury found Laird guilty

of "first-degree murder and set the penalty at death after unanimously concluding that the sole aggravating factor outweighed any mitigating circumstances." *Id.* (In view of the kidnapping conviction at the first trial, the parties stipulated to the aggravating circumstance that Laird killed Milano in perpetra-·tion of a felony. *Id.* at 624 n. 1.).

petition in the Bucks County Court of Common Pleas. The post-conviction judge (again Judge Biester) denied the petition as untimely filed under 42 Pa. Cons.Stat. Ann. § 9545(b)(1). The Pennsylvania Supreme Court affirmed that ruling. *Commonwealth v. Chester*, 586 Pa. 468, 895 A.2d 520, 524 (2006). In short, the state courts determined that Chester could have obtained Edwards's 1988 DUI arrest and conviction records much sooner than January 2001.

The stay in Chester's federal habeas case was lifted in 2006. The Commonwealth submitted an answer to Chester's petition in October of that year. In the "Argument" section of the answer, it contended that the conflict-of-interest claim was barred due to a procedural default, citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and that Chester could not show cause and prejudice or actual innocence. Within the "Argument" section of the answer, the Commonwealth's first heading stated: "**I. Petitioner's Attempt to Reopen the Alleged Trial Counsel's 'Conflict of Interests' Argument is Timebarred and Subject to Collateral Estoppel.**" Supp.App. 84 (emphasis in original). Under this heading, the Commonwealth argued that the Pennsylvania Supreme Court and state post-conviction judge had "already determined" that Chester's conflict of interest claim was timebarred, albeit under the PCRA. *Id.* The Commonwealth referred to the timeliness issue as "already adjudicated," *id.*, and then followed with a discussion of the Pennsylvania Supreme Court's analysis of the after-acquired evidence and governmental interference exceptions in a state statute, 42 Pa. Cons.Stat. Ann. § 9545(b)(1)(i) and (ii). Supp.App. at 85.

On the merits, the Commonwealth argued that there was no actual conflict, that the District Attorney had no duty to disclose Edwards's pending DUI, and that, because Edwards did not alert the trial judge to the existence of the DUI, the judge was under no obligation to ask whether Chester wished to proceed with different counsel.

On August 19, 2009, about three years later, Chester's habeas counsel moved for the habeas writ to issue immediately based on our decision in *Laird*, 414 F.3d 419. In addition, they indicated their intent to pursue only two guilt-phase claims: the conflict-of-interest claim and a severance claim. The District Court scheduled oral argument for the purpose of narrowing the issues, at which time the Commonwealth conceded that Chester was entitled to the same relief on the defective accomplice liability instruction that *Laird* had received-a new trial limited to the charge of first degree murder. Habeas counsel then argued three specific issues: why the conflict-of-interest claim was not barred due to a procedural default and also two issues concerning the merits of the claim. The Commonwealth argued the merits of the claim; the "question of *Williams v. Taylor* and whether the prisoner was diligent in his efforts;"[2] and whether the conflict claim was "procedurally defaulted."

In an order entered on February 28, 2011, the District Court vacated Chester's first degree murder conviction and death sentence without prejudice to the Commonwealth's right to retry him. *Chester v. Horn*, 2011 WL 710470 (E.D.Pa. Feb. 28, 2011). The Commonwealth has not appealed this decision. Prior to addressing

---

**2.** In *Williams,* the Supreme Court held that diligence under 28 U.S.C. § 2254(e)(2), the evidentiary hearing statute, did not require an investigation of public records where the prosecutor failed to disclose that he had previously represented the foreperson of the jury. 529 U.S. 420, 440–42, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Chester's request for a habeas evidentiary hearing, the District Court addressed and rejected as meritless the Commonwealth's argument that the conflict-of-interest claim was barred due to a procedural default, holding that our decision in *Bronshtein v. Horn,* 404 F.3d 700 (3d Cir.2005), effectively precluded the Commonwealth's argument.[3] The District Court granted Chester an evidentiary hearing on his conflict-of-interest claim, *see* 28 U.S.C. § 2254(e)(2),[4] and further determined that *de novo* review of the conflict claim was warranted.

At this stage of the habeas proceedings, all guilt-phase and sentencing claims relating to Chester's first degree murder conviction and death sentence were moot because of the Commonwealth's concession that a new trial was in order on the murder charge, but all guilt-phase claims (that is, the severance and conflict-of-interest claims) relating to the remaining convictions were not. On October 28, 2011, the District Court limited discovery solely to Edwards's DUI arrest and prosecution; the court denied any discovery with respect to his other personal problems. On January 20, 2012, Judge Alan Rubenstein gave a deposition. In it he acknowledged that he was aware of Edwards's DUI arrest at the time of Chester's trial because someone on his staff told him about it. He testified that Edwards himself never mentioned his DUI arrest and never mentioned that he was applying for the Accelerated Rehabilitative Disposition program ("ARD"), a diversion program of pretrial probation for qualified first-time offenders. App. 104. He testified that Edwards was a strong advocate for Chester, that he was well-prepared, and that, if he was not actually aggressive, it was because he was trying to "low-key" Chester's participation in the murder. *Id.* at 111–12. Judge Rubenstein testified that it never occurred to him that Edwards's DUI arrest posed a conflict of interest, *see id.* at 99100, 106, and that other members of his staff handled the DUI prosecution, *see id.* at 105.

Chester's habeas counsel tendered an affidavit dated February 14, 2012, which bore what purported to be Edwards's signature and which stated that he had been arrested for DUI while representing Chester at trial. It said that the charge was of "great concern" to him. *Id.* at 118. The affidavit also stated that Edwards was "scared" that he would not get ARD; that his wife was dying from multiple sclerosis, and because of this it was difficult for him to try Chester's case, as his "mind was someplace else during trial." *Id.* The affidavit stated:

---

**3.** Pennsylvania's PCRA statute of limitations was not firmly established nor regularly applied until November 23, 1998, at the earliest, when *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), which announced that the "relaxed waiver" doctrine no long applied in capital post-conviction appeals, was decided. *Bronshtein,* 404 F.3d at 709–10. Chester's default occurred on January 16, 1997, the PCRA's "grace period" filing deadline for those whose convictions became final before the state statute of limitations was enacted. Because the date of Chester's default predated *Albrecht,* the federal habeas procedural bar does not apply here and there is thus no need to undertake a cause-and-prejudice analysis.

**4.** As explained by the District Court, the history of the conflict-of-interest claim in this case—it was raised for the first time in an untimely second state post-conviction petition, but the default of the claim occurred during the state's "relaxed waiver" era—is identical to the history of the conflict-of-interest claim in *Morris v. Beard,* 633 F.3d 185, 196 (3d Cir.2011), and therefore *Morris* controls. In *Morris,* we held that, where a state court gives no reason for denying a petitioner's hearing request other than his failure to comply with an inadequate state procedural rule, we could not say that the petitioner lacked diligence for purposes of § 2254(e)(2).

My wife's condition, my pending criminal charges, and other financial difficulties I was having right then all interfered with my abilities in the courtroom. I was drinking more at this time. Mr. Chester's case was, for me, an incredibly difficult case to try with all this going on in my life. For one thing, if I could do it all over again, I would have been more aggressive in contesting what Alan Rubenstein was doing in court and I would have cross-examined Richard Laird. I believe my personal issues caused me not to do those things. I'm sure there were other things I would have done differently, but I just don't recall anything specific now. I just remember that as a result of the combination of difficulties in my life at the time, I did not represent Mr. Chester as well as I know I could have.... I self-medicated [a flare-up of my post-traumatic stress disorder] by drinking more, and this occurred during Mr. Chester's trial.

*Id.* at 118–19.

The District Court held a hearing on September 6, 2012. Prior to that, the District Court granted the Commonwealth's motion to preclude the testimony of several witnesses, including Laird's counsel. App. 116. Edwards testified via video conference. He reiterated generally that his wife's illness was devastating to him and that he was self-medicating his post-traumatic stress disorder with alcohol at the time of Chester's trial.[5] But when asked directly by habeas counsel if his pending DUI and other problems were distracting, he replied "No." *Id.* at 165. Habeas counsel then sought to impeach Edwards with the affidavit. Edwards would have none of it, and denied that he ever signed it. *Id.* at 171.

On the subject of plausible alternative trial strategies, Edwards did admit that use of Laird's prior convictions would have been helpful in establishing that Laird was a liar and that he might have missed this. *Id.* at 214. But in the main Edwards testified that he "was very aggressive during the trial." *Id.* at 216. On cross-examination, Edwards testified that he did not fail to do anything he should have done as a result of a fear that he would not get ARD, that he did not do anything differently because he feared the District Attorney, and that he did not fear not getting ARD because the DUI was his first offense. *Id.* at 217–18. The District Court then questioned Edwards and asked him if his pending DUI caused him to be less zealous in his representation of Chester; he replied that "it did not." *Id.* at 219. It asked him if all of his other personal problems caused him to "lay down" against the Commonwealth in his representation of Chester, and he replied that "[n]othing could be further ... from the truth." *Id.* It also asked him if all of the pressure that he was under caused him not to give his best effort in representing Chester, and he replied in the negative. *Id.* at 220.

On May 22, 2013, the District Court determined that the conflict-of-interest claim was meritless. *Chester v. Horn,* 2013 WL 2256218 (E.D.Pa. May 22, 2013). The Court noted first that, in addition to arguing a conflict claim based on the DUI charge pending against Edwards in the same jurisdiction, Chester was also arguing a separate conflict claim based on Edwards's personal financial struggles, legal battles (including liens and civil lawsuits), post-traumatic stress disorder flare-up, and his wife's illness, at the time of Chester's trial. This latter conflict claim, in the District Court's view, was meritless because an attorney's personal problems

---

**5.** Edwards's PTSD stems from his service during the Vietnam War.

generally are insufficient to show a potential conflict. *Id.* at *4 n. 6. On the other hand, Edwards's pending DUI could be considered a potential conflict that adversely affected his performance. The District Court then applied our decisions in *United States v. Gambino*, 864 F.2d 1064 (3d Cir.1988), and *Government of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir.1984), and found this conflict claim lacking in merit because Edwards's actions on Chester's behalf were unaffected by the DUI or the desire to curry favor with the District Attorney. The District Court held that Chester had failed to show that the pending DUI charge against Edwards caused him to change his trial strategy adversely and/or not employ certain methods in his trial strategy that should have been employed. The Court took into consideration that a DUI offense, in which the standard punishment is entry into a rehabilitative treatment program, cannot be compared to more serious offenses in which the possibility of a career-ending conviction rests in the hands of a zealous prosecutor.

The District Court further held that the trial judge did not abuse his discretion in failing to ask Chester if he wished to proceed with different counsel. It reasoned that Chester was found guilty and sentenced to death on May 20, 1988, but it was not until June 7, 1988 that Edwards was formally charged in the Court of Common Pleas. While Chester's post-trial motions were still pending when Edwards pleaded not guilty to the DUI, the District Court emphasized that, unlike the circumstances in *Zepp*, the charge Edwards faced was wholly unrelated to Chester's case. Moreover, under the Model Rules of Professional Conduct, defense counsel is in the best position to determine if a conflict exists, and Edwards did not disclose his potential conflict to the trial judge. Regarding the affidavit and Edwards's in-court testimony "recanting," the Court agreed with the Commonwealth that the affidavit constituted inadmissible hearsay under Federal Rule of Evidence 803. But the Court also went on to say that it "had the opportunity to assess Mr. Edwards's demeanor and testimony firsthand," and, "[a]t the end of the day, nothing [Chester] has provided ... establishes that a conflict of interest existed.... The existence of potentially different trial strategies that might have been employed by counsel is not enough." *Chester*, 2013 WL 2256218, at *5. In a later decision, the District Court determined that the severance claim lacked merit. *Chester v. Horn*, 2013 WL 5565510 (E.D.Pa. Oct. 8, 2013).

## II.  Analysis [6]

Chester timely appealed and sought a certificate of appealability in this Court on the conflict-of-interest claim only. We granted the certificate but also directed the parties to brief whether the conflict claim was timely filed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). The matter has been briefed and argued and is now ripe for disposition. We have considered the timeliness issue but ultimately rest our decision on the merits. In any event, we will affirm.

### A.  Timeliness Under 28 U.S.C. § 2244(d)(1)

The conflict-of-interest claim's untimeliness is apparent to us from the record and

---

**6.** We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). AEDPA deference does not apply in this case and we review the District Court's denial in part of habeas relief *de novo*. *Vega v. United States*, 493 F.3d 310, 314 (3d Cir.2007). We review the Court's factual findings for clear error. *Id.*

arguments. The one-year limitations period began to run in Chester's case when the Pennsylvania Supreme Court denied reargument on August 6, 1999 on appeal from the denial of his first PCRA petition. The AEDPA statute of limitations went into effect on April 24, 1996. *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998). At that time, Chester's timely first PCRA petition was still pending in the Bucks County Court of Common Pleas. This "properly filed application" tolled the running of the limitations period. 28 U.S.C. § 2244(d)(2). Because of the statutory tolling, the one-year limitations period did not begin to run in Chester's case until the Pennsylvania Supreme Court denied reargument on August 6, 1999. Therefore, Chester had until August 6, 2000 to file a timely habeas corpus petition or amendment containing a conflict-of-interest claim based on his trial counsel's 1988 DUI arrest and prosecution. There were no claims or grounds for relief at all raised in the August 16, 1999 filing. The conflict-of-interest claim based on trial counsel's DUI arrest and prosecution was not raised until the April 30, 2001 filing, almost eight months after the AEDPA deadline expired. Accordingly, regardless of whether the April 30, 2001 petition is considered the original or amended petition, the conflict-of-interest claim was untimely filed under 28 U.S.C. 2244(d)(1)(A).

■ The timeliness of a claim based on newly discovered evidence is judged under 28 U.S.C. § 2244(d)(1)(D). *Cf. Fielder v. Varner*, 379 F.3d 113, 118–22 (3d Cir.2004) (AEDPA statute of limitations applied on a claim-by-claim basis). For a petitioner asserting a claim based on newly discovered evidence, the limitations period will begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Here it appears that

there was ample time in which to discover Edwards's 1988 DUI arrest and prosecution and bring a conflict-of-interest claim based on it prior to the August 6, 2000 deadline. Chester's first PCRA petition included a claim that Edwards provided constitutionally ineffective assistance before and during the trial because of alcohol abuse. In pursuit of this claim, his post-conviction counsel sought to unseal Edwards's 1996 attorney disciplinary suspension record, Supp.App. 16–18, and told the post-conviction judge in open court that he had reason to believe that this record would provide information about Edwards's alcohol problem based on "interviews I conducted with individuals who are currently members of the bar, were members of the bar at the time, ... were in Bucks County, [and] were aware of the trial," *id.* at 18. In short, the information that would have led to discovery of Edwards's 1988 DUI arrest and prosecution is contained in the record of the first PCRA proceeding, and, in our view, there existed in 1997 just as much reason to investigate Edwards's DUI history-either by interviewing Laird's trial counsel or by searching the criminal docket, or both-as there was when current habeas counsel conducted their investigation in December 2000 and January 2001.

Of course, the AEDPA statute of limitations is subject to equitable tolling in appropriate cases, *Holland v. Florida*, 560 U.S. 631, 645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), but a petitioner must show *both* that: (1) he has been pursuing his rights diligently; and that (2) some extraordinary circumstance stood in his way and prevented him from timely filing his claim. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Even if the District Attorney neglected an ethical obligation to disclose the potential conflict at the time of the trial (and we do not decide nor imply that he did), Chester

would still have to show that he pursued his rights diligently, and it seems to us rather plain that he did not. *Id.*

■ Nevertheless, a habeas respondent may waive a procedural defense, even a meritorious one. "A waived claim or defense is one that a party has knowingly and intelligently relinquished...." *Wood v. Milyard,* —— U.S. ——, 132 S.Ct. 1826, 1832 n. 4, 182 L.Ed.2d 733 (2012) (citing *Kontrick v. Ryan,* 540 U.S. 443, 458 n. 13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). In *Wood,* the state twice informed the District Court that it would not challenge, but was not conceding, the timeliness under AEDPA of the petitioner's habeas petition. 132 S.Ct. at 1832. The Supreme Court held that, under those circumstances, the state was aware of the defense but had intelligently chosen not to rely on it, and, thus, the federal appeals court had no authority to override the deliberate waiver. *Id.* at 1834. In its answer to Chester's petition, the Commonwealth argued that the conflict-of-interest claim was barred due to a procedural default, *see Coleman,* 501 U.S. 722, 111 S.Ct. 2546, because the state PCRA's time bar is independent and adequate, and that Chester could not show cause and prejudice or actual innocence. In making this argument, the Commonwealth never mentioned the AEDPA statute of limitations defense under 28 U.S.C. § 2244(d)(1).

On the other hand, the Commonwealth also stated in a heading that Chester's "attempt to reopen" the conflict-of-interest argument was "time-barred and subject to collateral estoppel," Supp.App. 84, and that the Pennsylvania Supreme Court and state

post-conviction judge had "already determined" that Chester's conflict-of-interest claim was timebarred, albeit under the state PCRA, *id.* It further highlighted those Courts' discussion of the after-acquired evidence and governmental interference exceptions, 42 Pa. Cons.Stat. Ann. § 9545(b)(1)(i) and (ii), and their conclusion that these exceptions did not apply because Edwards's DUI arrest was a matter of public record and could have been discovered at the time of Chester's first PCRA petition. Supp.App. 85.[7]

Because the Commonwealth attempted to argue that the conflict claim was untimely (hence procedurally defaulted), though not under the statute that actually applies in federal habeas corpus proceedings, we cannot conclude that the Commonwealth was aware of the defense but intelligently chose not to rely on it. *Wood,* 132 S.Ct. at 1834. There was no mention of the AEDPA statute of limitations, but the repeated references to the conflict claim being timebarred lead us to conclude that the Commonwealth's decision not to rely on AEDPA stemmed from inadvertent error and not a concession or deliberate choice. We thus hold that the Commonwealth did not waive the AEDPA statute of limitations defense.

■ That does not end our analysis, however. Indeed, we hold that the Commonwealth's defense was forfeited. The Supreme Court recognizes a distinction between "waiver" and "forfeiture" of timeliness claims, *Wood,* 132 S.Ct. at 1832 n. 4. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or aban-

---

**7.** The state PCRA exceptions to timeliness are similar (although not identical) to the ones provided by AEDPA. In Pennsylvania, any petition invoking these exceptions must be filed within 60 days of the date the claim could have been presented, 42 Pa. Cons.Stat. Ann. § 9545(b)(2), whereas a federal habeas petitioner has one year in which to file a petition based on newly discovered evidence or the removal of a state-created impediment, 28 U.S.C. § 2244(d)(1)(B) and (D).

donment of a known right.'" *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Here, the Commonwealth failed to preserve the timeliness argument by not addressing directly the AEDPA statute of limitations, 28 U.S.C. § 2244(d)(1). Although there was ample discussion of timeliness, the Commonwealth steered the District Court toward the procedural default argument that the state PCRA's time bar is independent and adequate. The Commonwealth conceded at oral argument before us—as indeed the record requires—that it pursued only the procedural default argument.

We explained in *United States v. Joseph,* 730 F.3d 336 (3d Cir.2013), that there are "at least two characteristics that identical arguments always have. First, they depend on the same legal rule or standard. Second, the arguments depend on the same facts." *Id.* at 342 (citations omitted). The Commonwealth's procedural default argument simply does not depend on the same legal standards and facts as an argument that Chester's conflict-of-interest claim was not timely filed under 28 U.S.C. § 2244(d)(1). Moreover, at no time did the Commonwealth identify the key facts necessary to establish the AEDPA timeliness defense—that Chester's conviction became final when the Pennsylvania Supreme Court denied reargument on August 6, 1999; that Chester had until August 6, 2000 in which to file a timely habeas corpus petition or amendment containing a conflict-of-interest claim based on the fact of his trial counsel's 1988 DUI arrest and prosecution; and that the conflict claim was not raised until the April 30, 2001 filing, almost eight months after the AEDPA deadline expired. The Commonwealth has noted that it specifically argued before the District Court on March 22, 2010 that Chester had not been diligent in his efforts

to learn of Edwards's DUI arrest and that he could have discovered it well before he filed his second PCRA petition. *See* Appellees' Brief at 44–45. But that argument was made solely in the context of whether Chester had been diligent in developing a factual basis for his claim in state court, as required by 28 U.S.C. § 2254(e)(2), the habeas evidentiary hearing statute. Again, this argument is not the same as a timeliness argument under § 2244(d)(1). An AEDPA timeliness defense necessarily includes a discussion of when the petitioner's judgment of conviction became final, and a calculation of a specific date by which time the petitioner must have filed his § 2254 petition or amendment containing the claim at issue. That argument was completely missing here and thus the defense is forfeited.

■ Although we may "resurrect" a forfeited defense (but not a waived one), *Wood,* 132 S.Ct. at 1833 n. 5; *see also id.* at 1834 ("[W]e decline to adopt an absolute rule barring a court of appeals from raising, on its own motion, a forfeited timeliness defense."), the Supreme Court has cautioned that we may do so only in exceptional cases. We must respect "the principle of party presentation basic to our adversary system." *Id.* at 1833 (citing *Greenlaw v. United States,* 554 U.S. 237, 243–44, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008)). In addition, "[w]e must give due regard for the trial court's processes and time investment," because "[w]hen a court of appeals raises a procedural impediment to disposition on the merits, and disposes of the case on that ground, the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view." *Id.* at 1834. In order to resurrect the Commonwealth's forfeited timeliness defense in Chester's case, we would have to disregard the principles of party presentation basic to our

adversary system and the District Court's hard work in this case. We see no reason for doing this. The Commonwealth had many years to address AEDPA timeliness and never did. Accordingly, we decline to resurrect the Commonwealth's forfeited AEDPA timeliness defense.

## B. Merits

Turning to the merits, as a threshold matter we note that on direct appeal Chester argued a Sixth Amendment ineffectiveness claim concerning Edwards's decision to forgo cross-examining Laird. The Pennsylvania Supreme Court rejected the claim on the ground that Laird was adequately cross-examined by the District Attorney. The Court reasoned that Laird never wavered from blaming Chester, that further cross-examination would not have revealed any information tending to exculpate Chester, and that Edwards could reasonably have concluded that further cross-examination of Laird would have been "useless." *Chester*, 587 A.2d at 1383. Chester's current conflict-of-interest claim, although it is supported by many of the same facts as the ineffectiveness claim, is analytically distinct. *Compare Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to establish constitutionally inadequate representation a defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different), *with Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) *("Sullivan")* (defendant who shows that conflict of interest actually affected adequacy of his representation need not demonstrate prejudice in order to obtain relief).

A defendant is entitled under the Sixth Amendment to conflict-free representation. In *Sullivan*, the Supreme Court held that a defendant must establish that an actual conflict of interest adversely affected his counsel's performance. 446 U.S. at 349–50, 100 S.Ct. 1708. State trial courts must investigate counsel's timely objections to multiple representation, but if counsel does not object, courts need not make that inquiry. The Court stated that, unless the trial court knows or reasonably should know that a particular conflict of interest exists, the trial court may assume that counsel will discharge his ethical duty to avoid conflicting representations and to advise the court promptly when a conflict arises. *Id.* at 346–47, 100 S.Ct. 1708. In *Mickens v. Taylor*, 535 U.S. 162, 164, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court granted certiorari to address "what a defendant must show [in a case involving prior representation] in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." The Court held that, except in cases involving multiple concurrent representation where the risk of prejudice is high, an " 'actual conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Id.* at 171, 122 S.Ct. 1237 (emphasis in original). We note that Chester's case does not involve either multiple representation or prior representation, but the *Sullivan/Mickens* principles still guide our analysis of the theoretical division of loyalties issue presented here.

■ We agree with the District Court that Chester's conflict claim lacks merit because he failed to show that the pending DUI charge against Edwards caused him to change his trial strategy adversely and/or not employ certain methods in his trial strategy that should have been employed. Chester argues first that the Dis-

trict Court erred in requiring "strict proof," Appellant's Brief at 41, of an actual conflict in the form of a concession from Edwards that his conflict caused an adverse effect on his performance; that all he (Chester) needed to prove was that an adverse effect was likely; and that there were plausible alternative strategies for defending Chester that Edwards ignored. At oral argument, Chester's counsel asserted that the District Court had applied the wrong standard. After setting forth the correct standard—that Chester must demonstrate an actual conflict of interest that adversely affected his defense—the District Court quoted *Gambino* for the incorrect proposition that, "[t]o succeed in this claim, the 'lapse in representation' must be 'so egregious as to violate objective standards for attorney performance.'" *Chester*, 2013 WL 2256218, at *4.

Despite a misquotation from *Gambino, see infra* n. 8, the District Court properly applied the correct standard and our decision in *Gambino* when it determined that the conflict-of-interest claim lacked merit because Edwards's actions on Chester's behalf were unaffected by the DUI. In *Gambino,* we explained that an actual conflict of interest occurs when "the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." 864 F.2d at 1070. Relying on the decision of the United States Court of Appeals for the First Circuit in *United States v. Fahey,* 769 F.2d 829 (1st Cir.1985), we said that, in order to prove an actual conflict, the petitioner must show: (1) that some plausible alternative defense strategy or tactic might have been pursued; and (2) that the alternative defense was inherently in conflict with or not

undertaken due to the attorney's other loyalties or interests. *Id.* (citing *Fahey,* 769 F.2d at 836). With respect to the issue of a plausible alternative defense, we explained that the defense need only possess sufficient substance to be plausible. *Gambino,* 864 F.2d at 1070. We further stated that, "[c]learly, a defendant who establishes that his attorney rejected a plausible defense because it conflicted with the interests of another client establishes not only an actual conflict but the adverse effects of it." *Id.* at 1070–71.

The District Court applied this standard. It correctly observed that the pending DUI had the potential to cause Edwards to "pull his punches" in defending Chester. *Chester,* 2013 WL 2256218, at *3. It then required Chester to prove that a different trial strategy should have been pursued but was not because of Edwards's divided loyalties. *Id.* at *5; *see also Gambino,* 864 F.2d at 1070 (petition must show alternative strategy was not pursued because of conflict) (citing *Fahey,* 769 F.2d at 836). While it is true, as habeas counsel argued before us, that *Gambino* holds only that the plausible alternative defense possess sufficient substance to be a viable alternative, and that the District Court misattributed to *Gambino* some language to the contrary,[8] we are not persuaded that the mistake identified by counsel led the Court to apply the wrong standard. When the Court's opinion is read as a whole, it is clear that it applied the correct standard.

Chester argues that the following constitute plausible alternative strategies that Edwards failed to pursue: (1) he did not cross-examine Laird; (2) he failed to impeach Laird with his criminal record; (3)

---

**8.** In *Hess v. Mazurkiewicz,* 135 F.3d 905 (3d Cir.1998), we said in applying *Gambino* that a petitioner "need **not** show that the lapse in representation was so egregious as to violate objective standards for attorney perform-

ance," 135 F.3d at 910 (emphasis added). The District Court, in quoting *Hess* (but attributing the quote to *Gambino* ), left out the crucial "not," *Chester,* 2013 WL 2256218, at *4.

he selected pro-death jurors; (4) he failed to introduce evidence that Laird was the sole killer and the only one with a motive to kill Milano; (5) he did not seek admission of toxicology evidence showing that Milano was drunk; and (6) he did nothing to elicit from Chester, using his prior statements, that he had no intent to kill Milano. Notwithstanding whether these alternative tactics were desirable, or even necessary, Chester would still have to show that they were not pursued because of Edwards's divided loyalties.

Chester has not made this showing. There is no record support for his assertion that Edwards's performance at trial was affected by his desire to curry favor with the District Attorney or that he chose to "lay down" against the Commonwealth in his representation of Chester. Although there may have been plausible alternative strategies for defending Chester, none of them was inherently in conflict with Edwards's desire to be placed in ARD and avoid imprisonment. Specifically, even if Edwards should have used Laird's prior convictions to impeach him, Chester failed to show that this alternative tactic was inherently in conflict with or not undertaken due to Edwards's pending DUI.

The cases cited by Chester in support of his conflict claim involve obvious connections between the conflict and the questionable trial tactics, and, accordingly, do not support his claim for relief. In *Zepp*, we held that there was an actual conflict of interest because "trial counsel could have been indicted for the same charges on which he represented Zepp, and ... trial counsel was a witness for the prosecution." 748 F.2d at 136. We explained that "trial counsel had equal access and opportunity while alone in the house with Zepp to flush cocaine down the toilet. It is clear that he was potentially liable for aiding and abet-

ting or encouraging the destruction of evidence." *Id.* Similarly, in *Rugiero v. United States,* 330 F.Supp.2d 900, 907–09 (E.D.Mich.2004), trial counsel was under investigation by the U.S. Attorney for extortion and money laundering, and he had an incentive to avoid plea negotiations on behalf of his client, who was charged with drug trafficking, because he feared that his client had information that could be used against him; counsel sought to prolong the trial in hopes of delaying or avoiding his own indictment. Here, in contrast to *Zepp* and *Rugiero,* Edwards was charged with a DUI that was unrelated to the murder of Milano.

██ Chester also maintains that the District Court erred in excluding at the hearing evidence of Edwards's other personal problems, including evidence relating to his ill wife, his pre-existing PTSD, his unpaid taxes, and his severe financial problems. The Court declined to admit this evidence, deciding that a separate conflict-of-interest claim based on Edwards's other personal problems was legally insufficient to show a potential conflict. It did not err in excluding this evidence. It was in the best position to determine if there was anything "unique and unprecedented," Appellant's Brief at 64, about Edwards's personal life at the time of trial, and its implied finding that there was not is not clearly erroneous. *Gambino,* 864 F.2d at 1071 n. 3.

Chester next argues that the District Court failed to consider (1) Edwards's alleged "admissions," Appellant's Brief at 65, that his pending DUI and other personal problems adversely affected his performance at the trial, and (2) that the February 14, 2012 affidavit was substantive evidence under Federal Rule of Evidence 807. As a threshold matter, because Chester's separate conflict-of-interest claim pertaining to Edwards's other personal problems is le-

gally insufficient, his argument concerning how Edwards's testimony on these issues should have been weighed need not be considered. The argument was properly disregarded by the District Court in rendering its decision.

With respect to the conflict-of-interest claim based on Edwards's DUI arrest and prosecution, we conclude that the District Court did not clearly err in weighing the evidence, including the February 14, 2012 affidavit. The Court was entitled to rely on Edwards's in-court testimony that his challenged tactics were the result of strategy and not a conflict of interest. *Id.* at 1071–72. In any event, the Court did not rely exclusively on Edwards's in-court testimony about his performance in deciding the conflict-of-interest claim. It was but one of many factors considered. The Court also had the opportunity to view Edwards's demeanor and consider his answers to habeas counsel's questions. In addition, the Court gave habeas counsel free reign in impeaching Edwards with the affidavit. Although the Court concluded that the affidavit was inadmissible hearsay—and the "question a habeas court must ask when presented with hearsay is not whether it is admissible, since it is always admissible, but what probative weight to ascribe to whatever indicia of reliability it exhibits," *Al–Bihani v. Obama,* 590 F.3d 866, 879–81 (D.C.Cir.2010),—ultimately it found that Edwards's in-court testimony, and not the affidavit, was credible. We cannot say that the District Court clearly erred in this respect. Chester has argued that Edwards's disavowal at the § 2254 hearing of the signature on the affidavit was "ludicrous," Appellant's Brief at 75, but the Court did not make any specific finding regarding the validity of the affidavit and signature. It simply exercised its ultimate authority as the fact-finder to give weight to Edwards's in-court testimony. There was nothing improper about doing so.

Finally, Chester contends that the District ·Court erred in denying relief on the claim that the state trial judge failed to comply with his independent duty to ask about the conflict. The only circumstance in which Supreme Court precedent requires that a conviction be automatically reversed as a result of a trial court's failure to ask whether the defendant wishes to proceed with conflict-free counsel is where counsel is forced to represent codefendants and objects to that representation. *Mickens,* 535 U.S. at 168, 122 S.Ct. 1237 (citing *Holloway v. Arkansas,* 435 U.S. 475, 488, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Though the record shows that post-trial motions on behalf of Chester were still pending before the trial judge when the judge authorized Edwards's admission into the ARD program, *Chester,* 2013 WL 2256218, at *1, Chester is not entitled to relief on an argument that the trial judge failed to inquire into the potential conflict unless he can establish that an actual conflict adversely affected Edwards's performance. This was the holding of *Mickens,* and it applies here because this is not a conflict claim involving multiple concurrent representation.

## III. Conclusion

For the foregoing reasons, we will affirm the order of the District Court denying in part Chester's federal habeas corpus petition.