NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1633
_____

UNITED STATES OF AMERICA

v.

CHRISTIAN GUERRERO-ALVAREZ,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cr-00477-001)
District Judge:  Hon. Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2018

Before:  JORDAN, ROTH, *Circuit Judges* and STEARNS[*], *District Judge*.

(Filed: January 30, 2018)
_____

OPINION[**]
_____

_____

[*] Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Christian Guerrero-Alvarez pled guilty to illegal reentry after deportation. He now appeals his sentence, arguing that the District Court committed procedural and substantive errors when it sentenced him to thirty months of imprisonment followed by three years of supervised release. We will affirm.

## I. BACKGROUND

Guerrero-Alvarez is a Mexican citizen who does not have a lawful right to be in the United States. He has been deported on eight prior occasions. Three of those removals resulted in misdemeanor convictions for illegal entry in violation of 8 U.S.C. § 1325(a)(1). In October 2016, Immigration and Customs Enforcement apprehended Guerrero-Alvarez after receiving information that he had yet again returned to the United States unlawfully. He was indicted on one felony count of reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(l), and he pled guilty as charged.

In the Presentence Investigation Report ("PSR"), Guerrero-Alvarez's criminal history included two convictions for driving under the influence and the three prior convictions for illegal entry. Based on a total offense level of 13 and a criminal history category of V, the PSR observed that the imprisonment range recommended in the United States Sentencing Guidelines was thirty to thirty-seven months. The PSR also stated that a violation of § 1326(a) and (b)(l) carries a supervised release term of one to three years, a mandatory $100 special assessment, and a fine in the range of $5,500 to $55,000.

2

Although Guerrero-Alvarez objected to a part of the PSR regarding a prior conviction, there were no unresolved objections at the time of sentencing.

He did, however, submit a sentencing memorandum in which he sought a downward variance or departure because, in his view, "[b]oth his guideline calculations and criminal history category are artificially elevated based on maximum sentences which he never served, nor was in any danger of ever serving." (App. at 50.) He also said that a downward variance was warranted because he reentered the United States to support his family, because of his positive work history, and because he does not pose a threat to the public. In addition, he argued that he will likely remain in custody until his eventual deportation, negating any necessity for a term of supervised release.

The government responded that Guerrero-Alvarez's criminal and deportation history called for imprisonment within the guidelines range, and that supervised release was appropriate. According to the government, only a "meaningful sentence of imprisonment" would convey the severity of his criminal history and prior immigration violations and would function as a deterrent. (App. at 63.)

The District Court held a sentencing hearing on March 21, 2017, and, as noted earlier, sentenced Guerrero-Alvarez to thirty months of imprisonment, three years of supervised release, and a mandatory special assessment of $100. The Court rejected Guerrero-Alvarez's arguments for either a downward departure or variance and explained: "With your history, I could have put you higher into guidelines. Trust me. Because it's outrageous. It's so extreme that it really doesn't give your lawyer much to

3

argue on your behalf except her faith and hope in you and that doesn't carry the day

today." (App. at 67.)

Regarding supervised release, the Court stated: "I would fully expect you to be

deported following the satisfaction of your sentence, but if for some reason you are not,

and you remain here, you'll be on supervised release for three years." (App. at 67.)

Although Guerrero-Alvarez mentioned in his sentencing memorandum that there is,

under § 5D1.1(c) of the guidelines, a presumption against supervised release for

deportable defendants, he did not object at the sentencing hearing to the Court's

imposition of supervised release. He has timely appealed.

## II. DISCUSSION[1]

In sentencing, district courts follow a familiar procedure: they calculate the

applicable guidelines range, rule on motions for departure, and finally, exercise their

discretion by considering the sentencing factors set out in 18 U.S.C. § 3553(a).[2] *United*

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] A court is to consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed --
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

4

*States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).  When a sentence is challenged on appeal, we evaluate the sentence first for procedural error and, if it is procedurally sound, we review it for substantive reasonableness.  *United States v. Azcona-Polanco*, 865 F.3d 148, 152 (3d Cir. 2017).  Procedural errors, which include "failing to consider the § 3553(a) factors ... or failing to adequately explain the chosen sentence[,]" *id.* (quoting *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)), will generally necessitate a remand for resentencing, *id.*  "When reviewing for substantive reasonableness, we will affirm [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."  *United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017) (alteration in original) (internal quotation marks and citation omitted).

Guerrero-Alvarez argues that the District Court erred in three ways.  First, he claims that it procedurally erred by failing to adequately consider the sentencing factors listed in § 3553(a).  Second, he contends that it also procedurally erred by failing to meaningfully address the presumption in guidelines § 5D1.1(c) disfavoring supervised

---

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... ;
(5) any pertinent policy statement ... issued by the Sentencing Commission ... ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

release for deportable immigrants.  Third, he says that the Court substantively erred by imposing a term of supervised release.  Those arguments are unpersuasive.

> ### A. The District Court did not commit plain error in sentencing Guerrero-Alvarez to imprisonment.

Guerrero-Alvarez contends that the District Court committed procedural error by failing to specifically mention the statutory sentencing factors set forth in § 3553(a) when sentencing him to thirty months of imprisonment.  Because Guerrero-Alvarez failed to object to the District Court's explanation of the § 3553(a) factors at the sentencing hearing, we review this issue for "plain error." *Azcona-Polanco*, 865 F.3d at 151 (citing Fed. R. Crim. P. 52(b)); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014).

"The plain error test requires (1) an error; (2) that is clear or obvious and (3) affected the defendant's substantial rights, which in the ordinary case means he or she must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Azcona-Polanco*, 865 F.3d at 151 (internal quotation marks and citation omitted).  If those three conditions are met, a court will exercise its discretion to correct such an error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted).

In considering the § 3553(a) factors, a sentencing judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 152-53 (citation omitted).  "Although there is no uniform threshold, this explanation must be sufficient for us to see that the particular circumstances of the case have been given

meaningful consideration within the parameters of § 3553(a)." *Id.* at 153 (internal quotation marks and citation omitted). "[A] district court need not discuss and make findings as to each of the § 3553(a) factors so long as the record makes clear that the court has taken them into account." *United States v. Clark*, 726 F.3d 496, 502 (3d Cir. 2013) (internal quotation marks and citation omitted).

Here, Guerrero-Alvarez cannot establish that the District Court committed plain error. The record, in its totality, illustrates that the Court properly considered the statutory factors. At the plea hearing, the Court explained to Guerrero-Alvarez that it "would come up with ... the most fair and most just sentence under the circumstances of this case" by basing its decision "upon the sentencing guidelines and the traditional sentencing factors[.]" (App. at 20.) Then, at the sentencing hearing, in addition to weighing Guerrero-Alvarez's deportation and criminal history, the Court acknowledged Guerrero-Alvarez's personal history and characteristics, considered whether or not a term of confinement would serve a deterrent purpose, and noted that Guerrero-Alvarez's benign intentions to support his family did not absolve him of his decision to break the law. Indeed, the District Court emphasized Guerrero-Alvarez's history of repeated immigration violations when it noted that his past would qualify him for a higher sentence, although the Court chose to sentence him to the bottom of the guidelines range. The record indicates that the District Court adequately considered the § 3553(a) factors, and there was no procedural error, much less plain error.

**B.    The District Court did not commit plain error in sentencing Guerrero-Alvarez to supervised release.**

Guerrero-Alvarez also says that the District Court erred by imposing a term of supervised release, notwithstanding guidelines § 5D1.1(c)'s presumption disfavoring supervised release for removable immigrants. Our standard of review on this issue is a matter of dispute.

The government says that we should review for plain error because Guerrero-Alvarez failed to register his objection at the sentence hearing. Guerrero-Alvarez concedes that he failed to object on the basis of § 5D1.1(c) at the sentencing hearing, but he contends that we should nevertheless review his claim for abuse of discretion because *United States v. Azcona-Polanco*, a decision published after he was sentenced and in which we clarified the procedural requirements associated with § 5D1.1(c), announced a new rule that he could not have known about at his sentencing hearing. 865 F.3d at 153-54; *cf. Flores-Mejia*, 759 F.3d at 259 (reviewing a claim for abuse of discretion because the court did not apply retroactively a new rule that would have required the defendant to have objected at sentencing).[3] We disagree with that argument.

_____

[3] Guerrero-Alvarez also argues that he objected to supervised release in his sentencing memorandum, but that argument fails for three reasons. First, in his sentencing memorandum, Guerrero-Alvarez raised the issue that § 5D1.1(c) includes a presumption against supervised release for deportable defendants but he did not specify the argument he makes now. *See United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013) (raising an issue is insufficient for preserving arguments relating to that issue on appeal). Second, even if the argument had been raised in the sentencing memorandum, a procedural objection to a sentence cannot be made until the sentence is actually imposed. *See Flores-Mejia*, 759 F.3d at 256-57 ("[A] defendant must raise any procedural objection to his sentence at the time the procedural error is made ... . Until sentence is imposed, the error has not been committed. ... Simply put, a defendant has no occasion to

8

Neither *United States v. Azcona-Polanco* nor *United States v. Flores-Mejia* excuses Guerrero-Alvarez's failure to object to a term of supervised release. Before those cases, district courts were already required to explain sentences of supervised release. *United States v. Joline*, 662 F.3d 657, 659-60 (3d Cir. 2011). *Azcona-Polanco* simply clarified what an adequate explanation under § 5D1.1(c) entails. 865 F.3d at 153-54. In that case itself, we applied plain error review because the defendant failed to object at the sentencing hearing to the district court's imposition of supervised release. *Id.* at 154. In contrast, *Flores-Mejia* announced a new rule requiring a defendant to raise any procedural objection to his sentence at the time the sentence was imposed, and the court declined to apply retroactively that new burden on the defendants because they had "not been warned that they had a duty to object to the sentencing court's procedural error after sentencing." 759 F.3d at 256, 259.

Here, even without the clarification given in *Azcona-Polanco*, Guerrero-Alvarez was on notice that he should either object to the term of supervised release at sentencing or otherwise seek additional explanation for the imposition of supervised release. He did neither. Therefore, because he failed to preserve his procedural objection at the time the District Court imposed a sentence of supervised release, we review for plain error.

A court's decision to impose a term of supervised release is discretionary unless a statute makes such a term mandatory. *Azcona-Polanco*, 865 F.3d at 151 (citing 18 U.S.C.

---

object to the district court's inadequate explanation of the sentence until the district court has inadequately explained the sentence."). Third, although the PSR did not note the presumption against supervised release for deportable defendants, Guerrero-Alvarez forfeited any objections to the PSR by failing to timely raise them.

§ 3583(a); U.S.S.G. § 5D1.1 & cmt. n.1). The court's discretion is guided by the familiar § 3553(a) factors. *Id.* (citing 18 U.S.C. § 3583(c)). A deportable immigrant, however, is "presumptively exempt from the discretionary imposition of supervised release[.]" *Id.* (citing U.S.S.G. § 5D1.1(c)). The comments following § 5D1.1(c) explain why:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

U.S.S.G. § 5D1.1(c) cmt. n.5.

Even if we assume that the District Court here committed an error that is clear and obvious by failing to render a fuller explanation when imposing a term of supervised release, Guerrero-Alvarez's substantial rights were not affected.[4] To demonstrate that an error affected his substantial rights, Guerrero-Alvarez "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Azcona-Polanco*, 865 F.3d at 151 (internal quotation marks and citation omitted). He suggests that the District Court's "speculation that authorities might fail to

---

[4] In *Azcona-Polanco*, which, again, was published after Guerrero-Alvarez was sentenced, we held that a district court "must explain and justify the imposition of supervised release on a deportable immigrant" and "state the reasons in open court for imposing ... [such a term] so that the appellate court is not left to speculate about the reasons." 865 F.3d at 153 (internal quotation marks and citations omitted). Moreover, we said that the district court "should directly address the presumption against imposing supervised release and provide the court's reasoning for taking a different course of action in the case before it." *Id.* (internal quotation marks and citation omitted). The court need not "cite the guidelines section, but rather should acknowledge and address its substance." *Id.* (internal quotation marks and citation omitted).

deport [him]" is an impermissible reason to contravene the presumption against imposing supervised release. But the guidelines and our precedent make clear that a district court may reject that presumption with regard to a particular defendant, "if the court determines [that supervised release] would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.* at 154 (quoting U.S.S.G. § 5D1.1(c) cmt. n.5).

In *Azcona-Polanco*, we said that "any supposed deficiency in the [district court's] explanation [regarding the supervised release sentence] would not have affected [the defendant's] substantial rights given all of the facts cited by the District Court[.]" *Id.* Those facts included "his serious criminal history; that he previously defied an order of removal; that he was ordered removed a second time; that after being deported he illegally reentered the United States; and that he purchased false identification and assumed an alias to remain in the United States illegally." *Id.* at 154-55. Like the defendant in that case, Guerrero-Alvarez has been ordered removed from the United States repeatedly, has illegally reentered the United States after being deported, and has a criminal history, including being convicted several times of immigration offenses. Given those facts, it seems very unlikely that a lengthier explanation would have resulted in a different decision about supervised release. Thus, Guerrero-Alvarez has not established a violation of his substantial rights, and the procedural challenge to his sentence of supervised release fails.

**C.** **The District Court did not abuse its discretion in its substantive decision to sentence Guerrero-Alvarez to supervised release.**

Finally, Guerrero-Alvarez argues that the District Court's sentence of supervised release was substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *Id.* at 151 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Our inquiry is highly deferential, *see Tomko*, 562 F.3d at 568, and, when evaluating "substantive reasonableness, we will affirm [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Mateo-Medina*, 845 F.3d at 550 (alteration in original) (internal quotation marks and citation omitted). The District Court sentenced Guerrero-Alvarez to three years of supervised release – the maximum under the calculated range – in the event that Guerrero-Alvarez is not deported upon his release from custody. The record in its totality demonstrates that the District Court did not abuse its discretion in concluding that Guerrero-Alvarez's repeated illegal entries into the United States warranted the additional deterrence that supervised release provides. The Court here made "the type of individualized assessment that *Gall* demands, and to which we must defer." *Azcona-Polanco*, 865 F.3d at 155 (internal quotation marks and citation omitted). Thus, Guerrero-Alvarez's substantive challenge to his term of supervised release fails.

## III. CONCLUSION

For the reasons stated, we will affirm the District Court's judgment of sentence.